## In re NETTER & MEYER.

No. 4755.

District Court, W. D. Louisiana. Alexandria Division.

Aug. 18, 1933.

Thornton, Gist & Richey, of Alexandria, La., for city of Alexandria.

John H. McSween, of Alexandria, La., for tax collector Rapides parish.

Overton, Dawkins & McSween, of Alexandria, La., for John M. Barrett et al.

DAWKINS, District Judge.

This is an application to review the decision of the referee on the question of the relative rights of the landlord as against the claims of the city and state for taxes upon the funds of the bankrupt estate, which are insufficient to pay both classes. The referee has covered the matter fully and since I concur with the conclusion which he reached, his decision is affirmed and the opinion adopted and quoted in full, as follows:

"In this case the trustee realized a total of $727.16, $652.16 from the sale of the merchandise and fixtures and the remainder from other sources which for present purposes need not be detailed. The expenses of administration amounted to $198.67, leaving a balance of $528.49. John M. Barrett has a claim against the bankrupt in the sum of $800 for rent of the store building in which the merchandise and fixtures were contained. The state and parish taxes on the merchandise and fixtures for the years 1931 and 1932 amount to $456.75 and those of the city of Alexandria for 1930, 1931, and 1932 amount to $197.05.

"This controversy involves the manner in which the balance of $528.49 should be distributed. The trustee proposed by his account filed to pay the said fund to Barrett on account of his rent claim and the taxing authorities by oppositions filed claim the right to be paid by preference over Barrett.

"Section 64 of the Bankruptcy Act (11 USCA § 104) deals with debts that have priority and are to be paid in full in advance of the payment of dividends and it fixes the order in which they are to be paid, claims of taxes (b) (6) priming rent (b) (7). It has been decided that the funds coming under the operation of this section are those remaining for general distribution after the payment of liens and mortgages affecting particularly property. On the other hand, section 67 (11 USCA § 107) protects valid liens, which are not in any way affected by the bankruptcy proceedings and which must be paid out of the fund created by the sale of the particular property burdened with the lien by preference over mere priorities. That is the substance of the decision in City of Richmond v. Bird, 249 U. S. 174, 39 S. Ct. 186, 63 L. Ed. 543, where the lessor's lien was held superior to a mere state priority for taxes. And in City of Dallas v. Ryan, 62 F.(2d) 959, 961, decided by the Circuit Court of Appeals, Fifth Circuit, January 18, 1933 (rehearing denied February 20, 1933), it is said that the priorities of section 64 (b) (7) are such preferences as may on insolvency be given by law to debts due the sovereign, to a debt due by a trustee, or for rent of the like but unsecured by any previous lien.

"The solution of the problem, therefore, resolves itself into the question whether the tax claims of the state of Louisiana and of the city of Alexandria are secured by lien on the movable property within the meaning of the Bankruptcy Act. That Barrett, the lessor, had a true lien on the merchandise and fixtures contained in the leased premises cannot be questioned. Civil Code, arts. 2705, 3218, 3219; Fudickar v. Glenn (C. C. A.) 237 F. 808; Marshall v. Knox, 16 Wall. 551, 21 L. Ed. 481. If it were not for the recent decision in the City of Dallas Case, to which reference has already been made, the matter could be decided upon the authority of Little v. Peyton, 54 F.(2d) 678, decided by the United States District Court for the Western District of Louisiana on May 6, 1931, in which it was distinctly held (following the decision of the Supreme Court of Louisiana in Cleveland Steel Co. v. Joe Kaufman Co., 155 La. 529, 99 So. 428) that taxes on movable property constitute a lien superior to the lessor's lien thereon. And since the decision in the Cleveland Steel Company Case, the Supreme Court of Louisiana has again held in the case of Morelock v. Morgan & Bird Gravel Co., 174 La. 658, 141 So. 368, 370, that the state has a privilege on personal property, which primes all others, to secure the payment of taxes due or to become due.

"However, in the City of Dallas Case, the Circuit Court of Appeals was not content to rest its decision on the question of the existence vel non of a lien for taxes on personal property in Texas on the adjudications of the state courts, but on the contrary made a searching, original investigation of the Constitution and statutes to ascertain for itself whether the lien was conferred by law. This is made plain from the following excerpt:

" 'In ascertaining whether under Texas law state, county, or city taxes have a lien adhering to the property or a mere priority

arising on insolvency, we need to look to the Constitution, the general statutes, and the charter of the city of Dallas, which is a special act of the Legislature. Article 8, § 15, of the Constitution, reads: "The annual assessment made upon landed property shall be a special lien thereon; and all property, both real and personal, belonging to any delinquent taxpayer shall be liable to seizure and sale for the payment of all the taxes and penalties due by such delinquent.; and such property may be sold for the payment of the taxes and penalties due by such delinquent, under such regulations as the Legislature may provide."

" 'This section establishes a lien on land for taxes assessed against it. No lien in advance of seizure is provided on personalty, which is left to pass unencumbered from hand to hand. There is, however, nothing in the language to prohibit the Legislature, in providing for the collection of taxes on personalty and as an aid thereto, from establishing tax liens on it. There are a number of statutory provisions for summarily seizing and selling personal property for state and county taxes when delinquent, and some provisions for such action in advance of delinquency when the property is about to be removed from the county or in cases of assignment to creditors or the insolvency or the death of the taxpayer. None of these statutes mention the creation of a lien except articles 7048 and 7269. The former relates to stocks of merchandise only, and provides that, in cases where the owner has rendered them for taxes or owes an occupation tax and then becomes bankrupt or makes an assignment of his merchandise, the tax collector shall at once demand the payment of the taxes, and, if they are not paid, he shall seize and sell enough of the merchandise to pay the taxes, "and said taxes, until paid, shall constitute a prior lien on said merchandise, goods and wares in default of said taxes." We understand that the merchandise may be freely sold in the usual course of business, with no lien for taxes following it. It is only in case of insolvency or assignment, and against the complications then arising that a lien is set up. It is an effort to provide a preference in payment on insolvency, and is a priority under a state law rather than a true lien on property in subjection to which the title of the trustee in bankruptcy vests. Article 7269 relates to all sorts of property, and provides that, where a taxpayer makes an assignment to creditors, or his property is levied on, or he dies and leaves an insolvent estate and his

taxes are unpaid, "the amount of such unpaid taxes shall be a first lien upon all such property." The taxes are to be paid by the assignee, sheriff, or administrator, and, if not, the tax collector shall levy on and sell the property in whosesoever hands found. Here again no lien exists until the happening of specified events similar to a bankruptcy. There is no incumbrance superior to the trustee's title, but only a priority of payment on insolvency. Therefore, so far as state and county taxes are concerned, we find no lien securing them within the meaning of the Bankruptcy Act. They stand not as secured debts but as debts having priority under the state laws on insolvency, and would fall under section 64b (7), but since they are also taxes, in that character they fall under section 64b (6).'

"The provisions, both constitutional and statutory, of the Louisiana law are strikingly similar to those of Texas. The Constitution of 1921 (article 10, § 11) provides:

" 'Taxes on movables shall be collected by seizure and sale by the tax collector of the movable property of the delinquent, whether it be the property assessed or not, sufficient to pay the tax.'

"Section 33 of Act No. 170 of 1898 reads as follows:

" 'Be it further enacted, etc., That from the day said tax roll is filed in said mortgage office it shall act as a lien upon each specific piece of real estate thereon assessed, which shall be subject to a legal mortgage after the 31st day of December of the current year for the payment of the tax due on it, but not for any other tax; which mortgage shall prime and outrank all other mortgages, privileges, liens, encumbrances or preferences, except tax rolls of previous years.'

"Sections 41 to 49 of the same act provide the manner in which taxes on movables shall be collected. Section 49 reads in part as follows:

" 'Whenever, any sheriff, constable, marshal, receiver, liquidator, cyndic or other judicial or court officer or functionary shall take possession of personal property it shall be his duty to pay at once all the taxes that may be due or become due upon the same, and if he fails to do so he shall become responsible personally and upon his bond for the payment of the same. He shall file with his provisional and final accounts in the case of proceeding a certificate of the tax collector showing that all taxes upon such property seized or administered have been paid and

in the event of failure to do this he shall not be discharged upon his official bond.

" 'The Tax Collector shall also have the right to proceed by rule at any time in the Court having custody of personal property or the proceeds thereof, to compel such sheriff, constable, marshal, receiver, liquidator or syndic to compel the payment of all taxes due upon the property, without waiting for proceedings on final account or tableau of distribution.'

"Section 45 authorizes the tax collector to seize, without giving the tax debtor the notice required by section 41, any movables when he believes that such seizure is necessary to enable him to collect any tax due by the debtor and, further, upon the collector's filing an affidavit to the effect that the debtor will conceal, part with, or dispose of the same, the statute provides for the seizure of movables even before the tax is due.

"Article 10, § 14 of the Constitution provides that:

" 'All provisions of this Constitution regulating the collection of State taxes and tax sales shall apply to parish, district, municipal, board and ward taxes.'

"Act No. 119 of 1882 confers upon municipal officers authority to enforce collection of municipal taxes in the manner prescribed by laws relative to the collection of taxes due the state.

"In the Cleveland Steel Company Case and also in the Morelock Case the decision was based on the above quoted provision of section 49 of Act No. 170 of 1898, which provides that the sheriff, syndic, or other functionary into whose custody the movables should come shall at once pay the taxes that are due or may become due on the same under pain of personal responsibility and confers upon the collector a remedy by rule to compel the functionary to pay the taxes in advance of the distribution of the funds arising from their sale. The following excerpt from the Morelock Case gives the foundation for the ruling that the taxes on movables are secured by privilege:

" 'When the law calls upon such an official as a receiver or a syndic, meaning a syndic of an insolvent estate, to pay taxes, at once, on personal property of the receivership or estate administered by the syndic, due or that may become due, without any conditions or qualifications whatever, dealing with an estate, which in one instance is not uncommonly insolvent and, in the other, always so, and impowers tax collectors to enforce a compliance with this duty by appropriate methods, without waiting for proceedings on final account, the conclusion is inescapable that the law thereby confers on the state, in unmistakable terms, a privilege on personal property, to secure the payment of the taxes due, or that may become due, thereon, and that this privilege primes all others, for no exceptions are made as to the obligation of the officials, named, to pay, no matter what kind of obligations, and how many, are due by the estate. It is a matter of no consequence, as appears from the context of the law, whether or not the taxes fell due before the official took possession of the property.'

"But there is nothing either in the Constitution or the statutes that fixes a lien on movables prior to actual seizure by the sheriff or in advance of their possession by a syndic, liquidator, or other functionary. Section 33 of the revenue act, as above reproduced, in terms that are certain, confers a lien which primes all other mortgages, privileges, liens, incumbrances, or taxes upon each specific piece of real estate assessed which, according to section 71, is not affected by its sale or mortgage. That the statute is silent as to any lien on movables and that it contains no restriction upon their sale is strongly indicative of the fact that the Legislature never intended to impress them with any lien, which can exist in Louisiana, only when expressly and positively conferred by law and cannot result from mere construction. Applying here the yardstick of the City of Dallas Case, I am convinced that the statute (section 49) creates no incumbrance in favor of the state on the assessed movables but only a right to priority contingent upon the happening of certain events, i. e., the taking of the property in charge by sheriff, liquidator, syndic, etc. That would put the claims of the state and of the city of Alexandria under section 64, while Barrett's claim would be entitled to prior payment under section 67.

"It is, therefore, ordered that J. M. Shevnin, the trustee, pay the fund of $528.49 to John M. Barrett, the lessor, on account of his claim."