## CITY OF NEW ORLEANS v. HARRELL.
### No. 10385.

Circuit Court of Appeals, Fifth Circuit.
March 12, 1943.

Francis P. Burns, City Atty., and William Boizelle, Asst. City Atty., both of New Orleans, La., for appellant.

Jno. W. Harrell and James N. Brittingham, Jr., both of New Orleans, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

The City of New Orleans claims the status in bankruptcy of a secured creditor by reason of an alleged lien for taxes on movables. It asserts that said lien is prior

to a chattel mortgage lien under the constitution and laws of Louisiana, citing Liquid Carbonic Corporation v. Crow, 177 La. 379, 148 So. 422. Appellee cites Tropical Printing Co. v. Union Title Guarantee Co., 180 La. 702, 731, 157 So. 534, 543. The court below held that no such lien existed prior to seizure, and postponed payment of said taxes as provided in Section 67, sub. c of the Act of June 22, 1938.[1]

The questions presented by this appeal arose below on the petition of appellant to review an order of the referee in bankruptcy sustaining the trustee's account, ranking his proposed disbursements to creditors. The account showed total receipts of $1056.17, which included $432.50 that represented the proceeds of sale of one International truck subject to a chattel mortgage for a larger balance due for the purchase price, and $140 that represented the proceeds of sale of one G. M. C. truck also covered by a chattel mortgage for a larger balance due for the purchase price. The account proposed to pay, first, each mortgage creditor the sale proceeds of the truck covered by his mortgage, minus only the estimated cost of foreclosing his mortgage in a state court of appropriate jurisdiction, and, second, to disburse the entire balance in payment of bankruptcy costs of administration. According to such ranking, there were not sufficient funds to pay the entire costs of administration or to pay any part of wage claims entitled to priority or to pay any part of numerous city, state, and federal tax claims, totalling $1825.69.

There was no appeal from the judgment below sustaining the order of the referee, except that taken by the City of New Orleans. It appealed on the ground that its claim for personal property taxes primed the chattel mortgage claims by virtue of an alleged lien and privilege status under the constitution and laws of Louisiana.

■ The validity of the chattel mortgage liens is undisputed, and it is well settled that when property so encumbered is sold in a bankruptcy proceeding for an amount not exceeding the balance of the mortgage debt, the creditor holding such lien, provided it is a first lien, is entitled to the entire proceeds of the sale, less only the estimated costs of foreclosure under the state law.[2]

■ It is not necessary for us to decide whether appellant has a privilege status under state law for the collection of its taxes, because it is clear that it has no specific lien on movables prior to seizure, and there was no seizure for taxes of the bankrupt's property in this case. Conceding, without deciding, that before bankruptcy the City had an inchoate lien for taxes on movables of the bankrupt, the filing of the petition in bankruptcy, followed by adjudication, prevented the completion of the lien by seizure, and left appellant with its remedies under Section 67 subs. b and c of the Act of June 22, 1938.[3] If an inchoate lien for taxes be perfected under said Section 67, sub. b, the debt secured by said lien is nevertheless postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of Section 64 of said Act of June 22, 1938.[4] This enactment by Congress suspended the operation of state insolvency laws from the time of such enactment, subject only to such limitations as were or may be prescribed in the Bankruptcy Act; and Section 8435.1 of Dart's La. Gen.Stats. (La.Act 47 of 1936), has no application to the facts of this case, because it conflicts with the provisions of the Bankruptcy Act above cited.[5]

■■ Briefly to summarize: The nature and effect of a lien, within the meaning of the Bankruptcy Act, is governed by the law of the state where the bankrupt's property is situated. Prior to said Act of June 22, 1938, statutory liens that were inchoate or incomplete, and had to be perfected by seizure, did not survive in bankruptcy unless the seizure took place before the petition in bankruptcy was filed.[6] Section 67, sub. b of said Act now permits such

[1] 11 U.S.C.A. § 107, subs. b and c, 52 Stat., pp. 876, 877.

[2] Gugel v. New Orleans Nat. Bank, 5 Cir., 1917, 239 F. 676, 39 A.B.R. 160; Lerner Stores Corp. v. Electric Maid Bake Shops, 5 Cir., 1928, 24 F.2d 780, 11 A.B.R.,N.S., 704; L. Maxcy, Inc., v. Walker, 5 Cir., 1941, 119 F.2d 535, 45 A.B.R.,N.S., 793.

[3] 11 U.S.C.A. § 107, subs. b and c, 52 Stat. pp. 876 and 877.

[4] 11 U.S.C.A. § 104, sub. a, 52 Stat. p. 874.

[5] Tua v. Carriere et al., 117 U.S. 201, 210, 6 S.Ct. 565, 29 L.Ed. 855; Butler v. Goreley, 146 U.S. 303, 314, 13 S.Ct. 84, 36 L.Ed. 981; International Shoe Co. v. Pinkus, 278 U.S. 261, 49 S.Ct. 108, 73 L.Ed. 318; Carling v. Seymour Lumber Co., 5 Cir., 113 F. 483, 51 C.C.A. 1.

[6] In re Chandron & Peyton, D.C., 180 F. 841, 24 A.B.R. 811, 820; Southern Ry.

liens to be perfected by filing notice thereof with the bankruptcy court; this notice was not given in the case before us; but, if it had been, the result would be the same, because by subdivision c thereof the lienor would be placed in a special class of secured creditors whose claims are postponed in payment to the debts specified in clauses (1) and (2) of Section 64, sub. a of said Act.[7]

The court below did not err in sustaining the action of the referee, and the judgment appealed from is affirmed.

HUTCHESON, Circuit Judge (concurring specially).

I am in agreement with the result reached by the majority, but because I have reached that agreement by a different route, I think it well to briefly state my reasons.

The principles governing the disposition of this appeal are well settled. Collier in his excellent work on Bankruptcy, 14th Edition, Vol. 4, page 157, thus states them:

"In summary it can be said that under the Act of 1898 any lien, consensual or non-consensual, which was valid under applicable lien law remained valid in bankruptcy unless invalidated by some specific provision of the Act. This principle also governs under the Act of 1938, * * * and under the Act of 1898 all liens valid in bankruptcy had precedence over unsecured claims entitled to priority under Section 64.[1] * * * This general principle remains true under the Act of 1938, subject to the fact that Sec. 67, sub. c subordinates statutory liens under certain circumstances to debts having first and second priority under Section 64."

---

Co. v. Wilder, 5 Cir., 231 F. 933, 36 A. B.R. 747; Preetorius v. Anderson, 5 Cir., 236 F. 723, 38 A.B.R. 93; Hay v. Patrick, 3 Cir., 79 F.2d 407; In re Brannon, 5 Cir., 62 F.2d 959; In re Netter & Meyer, D.C., 6 F.Supp. 918.

Cutler-Hammer, Inc., v. Wayne, 5 Cir., 101 F.2d 823, cited by appellant is easily distinguished, because it was not the owner but the contractor that was a bankrupt. The owner was the debtor, the lience; and his property, charged with the lien, did not pass to the trustee. The contractor was the creditor of the owner (though the debtor of the materialmen), and had a special lien for his debt on the owner's building under the state statute that gave a lien to the materialmen. To make good his lien under the statute, each was required to comply with certain provisions relating to recording his claim and commencing an action within stated periods. The rights of the contractor passed to the trustee as of July 14, 1937, when the petition in bankruptcy was filed. In addition, the trustee was claiming the rights of a judgment creditor under the Bankruptcy Act, and was disputing the special lien of the materialmen.

As between the trustee and the materialmen, the owner was a disinterested stakeholder, and, with the consent of the bankruptcy court, might have been sued by both parties; nor was there anything to prevent the contractor, prior to his discharge and with the consent of the court, being sued by the materialmen to establish their debts. In these circumstances, the debts due the materialmen by the contractor being undisputed, the owner paid to the trustee the amounts due the materialmen, under an order entered pursuant to an agreement between the trustee and

materialmen. The order provided that the alleged lien on the property should be transferred to the fund, and that the owner should be released entirely. Each of the parties agreed to litigate in the bankruptcy court all claims with respect to said fund, and the trustee agreed "not to object to any of said proceedings on the ground that they should have been brought in the state courts, or in any court other than this court." See transcript of record, p. 21.

In its opinion this court said, p. 825: "Bankruptcy does not discharge valid liens any more when, though inchoate and in the process of completion, they are in good standing when bankruptcy comes, than when every required step has already been taken."

This language is entirely too broad and must be construed to apply only to liens on property of persons other than the bankrupt, because the liens on the owner's property were the only liens in controversy in the case, and the owner was not the bankrupt. This is indicated by the next sentence, which says that there was still time to take the necessary steps to complete the inchoate liens. If not so limited, similar questions as to the bankrupt's property are now set at rest by Section 67, subs. b and c of the said Act of June 22, 1938. 52 Stat. 876, 877, 11 U.S.C.A. § 107, subs. b and c.

[7] 11 U.S.C.A. § 104, sub. a, 52 Stat. p. 874; Collier on Bankruptcy, 14th Ed., Vol. 4, pp. 228, 234 et seq. Cf. United States v. Texas, 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356.

[1] In re Cardwell, D.C., 52 F.2d 158; City of Dallas v. Ryan, 5 Cir., 62 F.2d 959; In re Knox-Powell-Stockton Co., 9 Cir., 100 F.2d 979.

"In the drastic revision of Sec. 67, the drafters of the Act of 1938 took the caution and care to codify generally the case law that had developed under the Act of 1898 on the subject of statutory liens. * * * Section 67, sub. b not only codifies, but it makes clear what was doubtful before, viz., that statutory liens may be perfected after bankruptcy if they arose prior thereto, * * *.[2]

When, therefore, both before and after the Act of 1938, a lien arises under the laws of a state before bankruptcy, and further steps to be taken with reference to it are steps in its collection or its enforcement rather than in its creation, such a lien remains valid in bankruptcy. Thus 67, sub. b in the Act of 1938, taken by itself has effected little change in the law of bankruptcy. Sec. 67, sub. c, however, has introduced a completely new feature as to "statutory liens * * * on personal property not accompanied by possession of such property". This new feature is that while recognizing them as valid, it subordinates all such liens to two priorities. That is, 67, sub. c, has provided that such statutory liens and others dealt with in the paragraph shall under certain circumstances be subordinated to unsecured claims that enjoy a first and second priority.

Because of Section 67, sub. c, the City of New Orleans must, to prevail, establish more than that it had a statutory tax lien on personal property which arose before bankruptcy and was, therefore, valid both before and under Sec. 67, sub. b. It must establish that before bankruptcy its lien was accompanied by possession of the property, and since it stands admitted that it did not have possession, its claim must fall. In this view, it becomes unimportant to determine whether, as the City claims, under the provision of the constitution of Louisiana that taxes on movables shall be collected by seizure and sale by the tax collector, and the provision of Sec. 49 of Act 170 of 1898, providing that when a receiver, liquidator, sheriff, or other court officer takes possession of personal property he shall pay at once all taxes, the City's lien exists before or arises only after seizure.[3] For whether the seizure was a step in the creation, or, as in Knox-Powell-Stockton Co., supra, merely one of the steps for its enforcement, the sine qua non of its validity as a first and unsubordinated lien under 67, sub. c, that the lien be accompanied by possession at the time bankruptcy occurs, was absent here, and the City's claim to a clear and unsubordinated lien, priming the chattel mortgage and vendor's lien, falls. The reasons prompting the subordinating features of 67, sub. c are not hard to see. Collier states them very well: "Under the law as it stood prior to the Act of 1938, statutory liens came in ahead of prior liens. As a result of long inaction of tax authorities, liens for taxes which had accumulated over a number of years often consumed a bankrupt's entire estate even to the exclusion of costs and expenses of bankruptcy proceedings. * * * To afford protection to administrative costs and expenses to wage claims, the authors of subdivision b, which expressly reaffirmed the validity of statutory liens, collaborated in a limited subordination of those liens." Pp. 167, 168.

Nor may the City be heard to say that though subordinated by the statute to the two priorities, nothing in the statute purports to subordinate it to the mortgage lien which but for the bankruptcy it would have primed. Such claim is completely answered by the consideration that since the mortgage lien is not, and the City's lien is, subordinate to these two priorities, the City's claim must be subordinate to the mortgage. The reasonableness of this is supported by the holding of the Supreme Court of Louisiana in the Tropical Printing Co. case, supra, "It would be anomalous to hold that the claim of the city of New Orleans, which is subordinate to the claim of the United States [there under Sec. 3466, 31 U.S.C.A. § 191], is yet superior to the claim for costs of administration, notwithstanding the claim of the United States is subordinate to the claim for costs of administration."

For these reasons, I concur in the affirmance.

---

[2] Cf. Cutler-Hammer, Inc., v. Wayne, 5 Cir., 101 F.2d 823, certiorari denied, 307 U.S. 635, 59 S.Ct. 1031, 83 L.Ed. 1517; American Coal Burner Co. v. Merritt, 6 Cir., 129 F.2d 314.

[3] Cf. Cleveland Steel Co. v. Joe Kaufman, 155 La. 529, 99 So. 428; Morelock v. Morgan & Bird Gravel Co., 174 La. 658, 141 So. 368; Tropical Printing Co. v. Union Title Guarantee Co., Inc., 180 La. 702, 157 So. 534, 544.