**In re VALADE REFRIGERATOR MFG. CO.**
**O'DELL v. CITY OF DETROIT.**

Civil Action No. 3477.

District Court, E. D. Michigan, S. D.

Dec. 26, 1947.

444

Hiram Y. Popkin and Frazer & Popkin, all of Detroit, Mich., for plaintiff.

William E. Dowling, Corp. Counsel, and John H. Witherspoon, Asst. Corp. Counsel, both of Detroit, Mich., for defendant.

LEVIN, District Judge.

This suit, brought by the Trustee in Bankruptcy against the City of Detroit, Michigan, to recover certain monies received by it from the sale of the bankrupt's property, presents the following considerations:

1. Whether the City, and the other governmental agencies involved, acquired and perfected valid statutory liens on the bankrupt's personal property, prior to the filing of the petition in bankruptcy entitling them, under the provisions of the Bankruptcy Act, to priority of payment over the administration expenses of the bankrupt estate.

2. Whether the City properly disbursed the monies received from the sale of the bankrupt's property, conducted prior to the filing of the petition in bankruptcy.

The material facts are as follows:

Personal property taxes were assessed annually in accordance with the provisions of the Charter of the City of Detroit, upon personal property of the bankrupt, located in the City. In February 1941 taxes were unpaid for the years 1932, 1935 to 1940, inclusive. The Charter provided that all taxes were due and payable on July fifteenth in each year, and on that date became a lien upon the property taxed. The Charter further provided that in the event the taxes were not paid, collection should be enforced by the Treasurer of the City by levy and sale.

On February 27, 1941, the Treasurer of the City levied upon, seized and took possession of the property for the purpose of satisfying its lien for unpaid personal property taxes. The property was inventoried and advertised for sale in accordance with the provisions of the Charter.

Subsequent to the levy and seizure, but prior to the actual sale thereof, other liens attached for tax obligations to the State of Michigan, to the Michigan Unemployment Compensation Commission, to Giles Kavanagh, Collector of Internal Revenue, and to J. P. Sumeracki, Treasurer, Wayne County, Michigan. Intervening claims were filed with the City by these taxing authorities.

An arrangement was entered into between the City and the other lienors to sell the property free and clear of the tax liens and for the proceeds to be disbursed to the lien claimants in accordance with their claims. The property was sold at a sale beginning April 30, 1941, and the total sum received at the sale was $21,025.91.

No question was raised as to the validity or correctness of the amount of the claims asserted by the intervening governmental agencies. On the contrary, the bankrupt herein approved the payment of the tax obligations due and owing the various units of government, together with the costs of the sale and, by written authorization, directed payment of the surplus funds realized from the sale to one Joseph Hunt, formerly employed by the bankrupt. This writing, dated May 26, 1941, and addressed to Albert E. Cobo, Treasurer of the City of Detroit, stated as follows:

"This letter will serve as your authorization to turn over to Joseph Hunt, Trustee, the excess funds now in your hands, which funds were obtained by you by virtue of the sale of the assets of the Valade Refrigerator Manufacturing Company, and which funds amount to approximately the sum of $4,550.00."

The letter was signed on behalf of the bankrupt by its president and its treasurer. Shortly thereafter the exact amount of the surplus funds was definitely ascertained to be in the sum of $4,649.15. A voucher in this amount, dated May 27, 1941, was issued, and a check was prepared dated May 28, 1941, payable to Joseph Hunt, as directed by the bankrupt. The facts as to the actual delivery of this check are in dispute, but I find that sometime during the afternoon of May 29, 1941, the check was delivered to the agent of the bankrupt, and the City received a receipt dated May 29, 1941, signed by the president and the treasurer of the bankrupt, reading as follows:

"Received of Albert E. Cobo, City Treasurer, the sum of Four Thousand Six Hundred and Forty Nine and 15/100 ($4,649.15) Dollars, being the excess funds realized from the sale of the assets of the Valade Refrigerator Manufacturing Company."

On the same day but subsequent to the delivery of this receipt, an involuntary petition in bankruptcy was filed against the bankrupt.

Soon after the filing of the petition, the City proceeded to disburse the remaining monies in its hands, for the payment of the costs of sale, intervening tax liens as hereinabove mentioned, and its own tax claim, all of which amounted to the sum of $16,376.76.

On June 2, 1941, a receiver was appointed for the bankrupt and thereafter, on July 9, 1941, it was duly adjudicated a bankrupt.

The Trustee in Bankruptcy contends that the payment of the tax claims to the City and the other governmental agencies should be set aside for the reason that the bankrupt was insolvent at the time of the sale of its property, and further because the actual disbursements in payment of the claims were made after the filing of the petition in bankruptcy.

The rights of the plaintiff trustee and the City are governed by Section 67, subdivisions b and c, of the Bankruptcy Act as amended in 1938, 11 U.S.C.A. § 107, reading as follows:

"b. The provisions of Section 60 of the Act to the contrary notwithstanding, * * * statutory liens for taxes and debts owing to the United States or any State or subdivision thereof, created or recognized by the laws of the United States or of any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition in bankruptcy * * *. Where by such laws such liens are required to be perfected and arise but are not perfected before bankruptcy, they may nevertheless be valid, if perfected within the time permitted by and in accordance with the requirements of such laws, except that if such laws require the liens to be perfected by the seizure of property, they shall instead be perfected by filing notice thereof with the court.

"c. Where not enforced by sale before the filing of a petition in bankruptcy * * * though valid under subdivision b of this section, statutory liens including liens for taxes or debts owing to the United States or to any State or subdivision thereof, on personal property *not accompanied by possession* of such property * * * shall be postponed in payment to the debts specified in * * * of this Act * * *."

Thus it is made clear that statutory liens for taxes "may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition in bankruptcy." The word "may" in Section 67, sub. b, supra, has been held to be used in a mandatory rather than a permissive sense. Davis v. City of New York, 2 Cir., 119 F.2d 559.

The aforementioned sections clarify and enlarge the former Section 67 of the Bankruptcy Act. By the present Chandler Act, Congress has made specific provisions for and has clearly outlined the manner in which lienors may obtain a prior right to the assets of a bankrupt. The interpretation to be accorded this section is well stated in Collier on Bankruptcy, 14th Ed., Vol. 4, page 157:

"Under the Act of 1898, all liens valid in bankruptcy had precedence over unsecured claims entitled to priority under Section 64 * * *. This general principle remains true under the Act of 1938, subject to the fact that Sec. 67 sub. c subordinates statutory liens under certain circumstances to debts having first and second priority under Section 64. * * * In the drastic revision of Section 67 the drafters of the Act of 1938 took the caution and care to codify generally the case law that had developed under the Act of 1898 on the subject of statutory liens * * *."

The author further makes clear the need for the subordinating provisions of sub. c when he states at pp. 163, 164:

"Under the law as it stood prior to the Act of 1938, statutory liens came in ahead of priority claims. As a result of long inaction of tax authorities, liens for taxes

which had accumulated over a number of years often consumed a bankrupt's entire estate even to the exclusion of costs and expenses of bankruptcy proceedings * * *. To afford protection to administrative costs and expenses to wage claims the authors of subdivision b, which expressly reaffirmed the validity of statutory liens, collaborated in a limited subordination of those liens."

■ The City therefore amply satisfied the requirements laid down in Section ·67, subs. b and c, supra, to enable it to obtain priority of payment. The United States of America, the State of Michigan and the County of Wayne also had valid liens under the statutes creating the rights to impose the taxes claimed by them. No question is raised as to the validity or amount of the taxes due these intervening lienors, or the statutes creating the respective liens. Immediately upon advertisement of the proposed sale by the City, they ·asserted and filed intervening claims with the City for their unpaid taxes. The court is satisfied that the bankrupt was indebted to these agencies and authorized the City to make payment of their claims out of the proceeds of the sale, prior to the filing of the petition in bankruptcy. Their right to priority of payment is therefore likewise established. In the case of City of New Orleans v. Harrell, 5 Cir., 134 F.2d 399, 402, Judge Hutcheson, in a separate .concurring opinion, clearly states the application of Sec. 67, sub. c:

"When, therefore, both before and after the Act of 1938, a lien arises under the laws of a state before bankruptcy, and further steps to be taken with reference to it are steps in its collection or its enforcement rather than its creation, such a lien remains valid in bankruptcy. Thus 67, sub. b in the Act of 1938, taken by itself has effected little change in the law of bankruptcy. Section 67, sub. c, however, has introduced a completely new feature as to 'statutory liens * * * on personal property not accompanied by possession of such property'. This new feature is that while recognizing them as valid, it subordinates all such liens to two priorities. That is, 67, sub. c, has provided that such statutory liens and others dealt with in the paragraph

shall under certain circumstances be subordinated to unsecured claims that enjoy a first and second priority."

See also City of New York v. Hall, 2 Cir., 139 F.2d 935.

■ It is immaterial that the actual payments in discharge of the tax liens were not made until after the filing of the petition. The rights of the parties herein are determined as of the time of the filing of the petition in bankruptcy. The tax liens having been perfected by possession · and sale of the bankrupt's property, the claimants are entitled to payment, together with the necessary expenses of sale, prior to the expenses of administration.

■ The tax claim of the City amounted to $12,964.93, consisting of $9,447.53 principal, and interest of $3,517.40 on the past due taxes. The claim of the Trustee that the sum of interest collected ·by the City was, in fact, a penalty and, as such, cannot be allowed under Section 57 sub. j, of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. j, is also without merit.

In accordance with the mandate of the Charter, Title VI, Chap. IV, the charge was periodically added during the first year following the time the tax was payable, and the aggregate sum thus charged did not exceed 7% at the end of such first year. The tax so augmented by that sum bore regular and not compound interest at the rate of 2% quarterly until the tax was collected. The rates fixed on delinquent taxes under the taxing powers of the City of Detroit were not unreasonable, particularly since 7% is permitted by law of the State of Michigan, as interest for the use of money by private agreement. Compiled Laws Mich. 1929, § 9239, Mich.Stat.Ann. 19.11. The Charter describes this additional charge as interest, and nowhere therein is it referred to as a penalty. While this designation ·by the City is not conclusive, it is of probative force. See Re Beardsley & Wolcott Mfg. Co., City of Waterbury v. Lyle A. Brown, et al., 2 Cir., 82 F.2d 239, 104 A. L.R. 881.

■ The Trustee's contention that the City did not have the right to pay over to the bankrupt, or its agent, the monies remaining in its hands after deducting the

necessary expenses of sale and tax liens claimed, is not valid. Such excess monies in the sum of $4,649.15 were paid over by the City to the bankrupt's agent prior to the filing of the petition in bankruptcy pursuant to the bankrupt's written instructions. If, as the Trustee now claims, the recipient thereof was not entitled to the money, the Trustee should pursue the transferee rather than the City.

The court concludes that the seizure and sale of the bankrupt's property and the disbursement of the proceeds of the sale were authorized in law.

Judgment will be entered for the City.