In the Matter of **QUAKER CITY UNI-FORM CO., Inc., Bankrupt.**

**Daniel P. Veloric, Appellant.**

**No. 11793.**

United States Court of Appeals Third Circuit.

Argued March 6, 1956.

Reargued Oct. 2, 1956.

Decided Oct. 31, 1956.

Joseph Weiner, Philadelphia, Pa. (Freedman, Landy & Lorry, Philadelphia, Pa., on the brief), for appellant.

Jerome L. Markovitz, Philadelphia, Pa. (Markovitz, Stern & Shusterman, Philadelphia, Pa., on the brief), for Delsea Corp., appellee.

David Goldberg, Philadelphia, Pa. (Verlin & Goldberg, Philadelphia, Pa., on the brief), for wage claimants.

Harry Fischer, Philadelphia, Pa., for trustee.

William R. Klaus, William M. Keenan, James Alan Montgomery, Jr., Pepper, Bodine, Frick, Scheetz & Hamilton, Philadelphia, Pa., on the brief for Fidelity-Philadelphia Trust Co., amicus curiae.

John E. Mulder, Philadelphia, Pa., on the brief amicus curiae.

Milton P. Kupfer, New York City, on the brief for National Commercial Finance Conference, Inc.

Carl W. Funk, Drinker, Biddle & Reath, Philadelphia, Pa., on the brief for Banks.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

This appeal involves the distribution of certain funds in the hands of the trustee in bankruptcy for the Quaker City Uniform Co., Inc., of Philadelphia, Pennsylvania, which was adjudged a bankrupt on July 2, 1953, by the District Court for the Eastern District of Pennsylvania. Specifically, we are asked to determine the relative order of distribution among

(1) chattel mortgage holders prior in time to any claimants, (2) the landlord of the bankrupt who had made a distraint for rent but who had not sold any property, (3) various wage claimants, and (4) administration expenses.

The facts are stipulated. The bankrupt leased premises for its business from the Delsea Corporation, the landlord. The bankrupt gave a chattel mortgage to one Veloric on August 30, 1951, and a second chattel mortgage to Fidelity-Philadelphia Trust Company on August 19, 1952. Both mortgages were duly recorded on their respective days of delivery. Non-payment of rent prompted the Delsea Corporation to issue a landlord's warrant on May 12, 1953. The constable levied on all the goods on the bankrupt's premises, including the goods securing both chattel mortgages. The sale of the goods under the distraint was stayed by execution issued by the sheriff. On June 16, 1953, an involuntary petition in bankruptcy was filed. The following claims were asserted against the fund of $9,896.77 in the hands of the trustee: [1]

| | | |
|---|---|---|
| 1. | Administration expenses | $ 676.00 |
| 2. | Philadelphia Joint Board, Amalgamated Clothing Workers of America, valid wage claims | 2,543.53 |
| 3. | College Hall Fashions, assignees of valid wage claims | 1,517.00 |
| 4. | Synthetic Specialists, Inc., assignees of valid wage claims | 7,001.60 |
| 5. | Delsea Corporation, landlord; gross rent in arrears | 3,641.07 |
| 6. | Veloric, chattel mortgagee | 3,480.00 |
| 7. | Fidelity-Philadelphia Trust Company, chattel mortgagee | 2,612.80 |

Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104, provides priorities among certain *unsecured* creditors. This section does not purport to dictate priorities among holders of valid liens. In fact, it is only after valid liens are satisfied that Section 64 becomes operative.

The Chandler Act of 1938 introduced Section 67, sub. c, 11 U.S.C.A. § 107, sub. c:

"c. Where not enforced by sale before the filing of a petition initiating a proceeding under this Act * * * (1) though valid against the trustee under subdivision b of this section, statutory liens * * * on personal property not accompanied by possession of such property, and liens, whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision a of section 64 of this Act * * *."

Thus expenses of administration and wage claims, while normally merely unsecured claims given first and second priority as such under Section 64, sub. a, become payable under the specific language of Section 67, sub. c, before the lien of the landlord.

Except in situations where federal law has spoken, priority among liens is determined by the law of the state. Seymour v. Wildgen, 10 Cir., 1943, 137 F.2d 160, 161; 4 Collier on Bankruptcy 296, 1347 (14th ed.). By settled Pennsylvania law, the landlord's lien by way of distraint takes precedence over a chattel mortgage, and this notwithstanding the fact that the landlord's levy was subsequent in time to the recordation of the mortgage. Commercial Credit Plan v. Mahoney, 1948, 67 Pa. Dist. & Co.R. 577; see also Reinhart v. Gerhardt, 1943, 152 Pa.Super. 229, 31 A.2d 737; National Cash Register Co. v. Ansell, 1937, 125 Pa. Super. 309, 189 A. 738. The wage claim assignees are not lien-holders, and their claims must be predicated upon their status as unsecured creditors entitled to second priority under Section 64, sub. a, of the Bankruptcy Act.[2] Applicable Penn-

---

[1]. An agreement was reached between counsel that the mortgaged chattels be sold and the amount realized from the sale substituted for the pledged person- alty. The proceeds of that agreed sale represent the bulk of the funds in the hands of the trustee.

[2]. See In re Curran's Restaurant & Bak-

sylvania lien law would thus give the landlord's lien priority over the lien of the chattel mortgage; the claim for wages would come last. And such would be the order of distribution for these items if Section 67, sub. c, were inapplicable. The state lien law applies, of course, only where federal law has not supplanted it.

As we have seen, Section 67, sub. c, expressly subordinated the lien of the landlord to the payment of administrative expenses and wage claims, the first and second priorities under Section 64, sub. a. The referee took the position that since the landlord's lien was subordinated under Section 67, sub. c, and the liens of the chattel mortgages were not so postponed expressly by the section, these latter liens were to be satisfied first; then administrative expenses and wage claims were to be paid, and finally the landlord's lien. Such also was the position taken by the chattel mortgagees. The district court agreed with the referee that the chattel mortgagees were entitled to payment ahead of administration costs and wage claims but ordered that the landlord be paid out of the amount awarded to the chattel mortgagees because, under the law of Pennsylvania, interests of the chattel mortgagees were subjected to the landlord's lien. In the Matter of Quaker City Uniform Co., Inc., D.C., E.D.Pa. 1955, 134 F.Supp. 596.

■ The intent of Congress in the passage of Section 67, sub. c, as stated in 4 Collier on Bankruptcy 288 (14th ed.), was "to provide a measure of much-needed protection, (1) for administrative costs and expenses in the interest of bankruptcy administration, and (2) for wage claims in the interest of protecting a weak but deserving economic class, against the ravages of certain accumulated liens on the bankrupt's property." Again, the purpose of subordination of liens was expressed in a Committee Report Analysis of H.R. 12889, 74th Cong., 2d Sess. (1936) 212, n. 1:

"There is therefore need for a provision to protect the administration costs and expenses; and similar considerations apply to wage claims. Accordingly we have selected, from among the priorities fixed by Section 64 (as revised), these particular items for protection."[3]

We are in agreement with the opinion of the district court that Congress did not intend by Section 67, sub. c, to disturb the priority of liens established by state law. Its sole concern was apparently to insure payment of administrative expenses and small wage claims. See California State Dept. of Employment v. United States, 9 Cir., 1954, 210 F.2d 242, 244. However, we are unable to agree with the reasoning of the district court which would save the landlord's lien from subordination because of the existence of a chattel mortgage.

■ It is not necessary to decide whether or not a Pennsylvania chattel mortgage is a "statutory lien" within the meaning of Section 67, sub. c, and thus subordinated by that section to administration expenses and wage claims.[4]

ing Co., D.D.E.D.Pa.1934, 11 F.Supp. 8, 9, where it was decided that the Pennsylvania statute (43 Purdon's Pa.Stat. Annot. § 221) did not give wage claimants a "lien" cognizable in banruptcy even though the word "lien" was used in the statute. And even if the statute meant that a "lien" was given, there is nothing in the record of the instant case to show that such wage claims were filed in the appropriate prothonotary's office as required by the Act. In the case of In re Pennsylvania Central Brewing Co., 3 Cir., 1940, 114 F.2d 1010, 1012, certiorari denied Stern v. Pennsylvania Central Brewing Co., 1941, 312 U.S. 685, 61 S.Ct. 612, 85 L.Ed. 1123, failure to file wage claims as prescribed by statute was deemed sufficient to deny the claim the status of a lien.

3. Cited in Goggin v. California Division of Labor, 1949, 336 U.S. 118, 127–128 note 8, 69 S.Ct. 469, 93 L.Ed. 543.

4. Clause (2) of Section 67, sub. c, states that "statutory liens created or recognized by the laws of any State for debts owing to any person * * * shall not be valid against the trustee * * *." The effective date of this amendment was October 7, 1952. Since both chattel mortgages in the instant case were re-

For the purposes of this opinion, however, we shall *assume* that it is not a "statutory lien" within the purview of Section 67.[5] Thus the determinative issue may be stated in this manner: Where a landlord's lien which is subordinated by Section 67, sub. c, is superior under applicable lien law to the lien of a chattel mortgage not within the express terms of Section 67, sub. c, is this latter lien also subordinated by necessary implication?[6] We are of the opinion that it is.

There are a few cases which suggest solutions to this problem. In City of New Orleans v. Harrell, 5 Cir., 1943, 134 F.2d 399, involving a dispute between a chattel mortgagee and the City which claimed a superior tax lien, the court held the tax lien ineffectual because it had not been properly perfected. There is, however, in that opinion dictum to the effect that even if the tax lien had been perfected, the chattel mortgage would be paid first because its lien is unaffected by bankruptcy, whereas Section 67, sub. c, expressly subordinates tax liens to the priorities of administration expenses and wage claims.

This was the position of the referee in the case at bar. It must be noted, however, that such an interpretation would ascribe to Congress the intent that a chattel mortgagee should benefit from the event of bankruptcy, before which his lien was inferior to the landlord and after which it became the superior lien. This view contains the undesirable feature of needlessly upsetting state lien priority rules, and for that reason it was expressly rejected in California State Dept. of Employment v. United States, 9 Cir., 1954, 210 F.2d 242, 244:

"From a consideration of both the language used in the Act and the legislative history we are persuaded that § 67, sub. c. does not affect or impair the priorities of liens * * *."

The last mentioned case suggests the following solution. Enough from the estate should be set aside to satisfy the holder of the lien superior by applicable lien law. However, since this superior lien is subordinated under Section 67, sub. c, from the amount thus set aside must be paid expenses of administration and wage claims. Whatever remains goes to the holder of the inferior lien. The difficulty presented by this solution is that the superior lien will be defeated to the extent of the administrative expenses and wage claims. (See 4 Collier on Bankruptcy 299 n. 43.) This criticism is forcefully apposite in the factual situation presented here. The wage claims asserted in this case would consume the entire amount set aside for the landlord and even worse than the fear of merely upsetting state lien priority, the application of the rule in this case would completely *destroy* the superior state lien.

A further review of possible solutions would not aid in the determination of the issue presented here.

▮ In view of the fact that Congressional intent was to favor expenses of administration and wage claims while leaving state priorities unaffected, we hold that the lien of the chattel mortgage, inferior under state law, is by necessary implication postponed by Section 67, sub. c, to a position behind the subordinated

---

corded before that date, the amendment, prospective only in its effect, is not applicable here.

5. In re Tele-Tone Radio Corp., D.C.N.J. 1955, 133 F.Supp. 739, decided that a factor's lien in New Jersey was not a "statutory lien" within Section 67, sub. c.

6. This problem of priority in lien circuity has been described as "insoluble on any known principles," Andrus v. Burke, Ch. 1901, 61 N.J.Eq. 297, 299, 48 A. 228, 229,

and a "first-rate legal puzzle," in Professor Kocourek's article in 29 Ill.L.Rev. 952, 1935. Osborne, Mortgages (1951) 532-539 summarizes seven methods of solution in these problems of lien circuity. However, it must be remembered that the intent of Congress must be given operative effect in bankruptcy proceedings, and consequently we are given little assistance by decided cases which do not touch federal questions.

landlord's lien.[7] Thus, the order of payment becomes: (1) costs of administration; (2) wage claimants; (3) landlord; and (4) chattel mortgagees. Since the administration expenses and wage claims will consume the bankrupt's estate, nothing will remain for the landlord or the chattel mortgagees; it follows that the limitation in the amount of the payment to the landlord under Section 67, sub. c, need not be discussed.

The order of the district court will be reversed and the cause remanded with directions to proceed in conformity with this opinion.

7. Note 14 in 4 Colliers on Bankruptcy 291 discussed Section 67, sub. c: "While clause (1) of subdivision c is restricted in its terms to statutory liens and liens of distress for rent, other liens not within its terms may be subordinated under an interpretation that liens inferior under applicable lien law to those postponed by § 67c(1) are likewise postponed by necessary implication."

Footnote 41 at page 297 is explanatory of this result: "This mode of disposition carries out the view that the subordination provision does not affect the relative priority of [landlord] and [chattel mortgagee], and that the subordination of [chattel mortgagee] as well as [landlord] to the claims entitled to priority under § 64a is merely the incidental result of the application of § 67c(1) to [landlord's] lien. It presumably underlies Matter of Michael's Cafeteria, Inc., D.C.La.1943, 49 F.Supp. 657, 53 Am.B.R.,N.S., 289, on rehearing, D.C. 52 F.Supp. 799, 55 Am.B.R.,N.S., 332, where the court apparently subordinated a chattel mortgage along with a prior landlord's lien to administrative and wage claims."