**Austin JORDAN and United States of America, Appellants,**

v.

**R. C. HAMLETT et al., Appellees.**

**No. 19868.**

United States Court of Appeals
Fifth Circuit.

Jan. 9, 1963.

Albert W. Copeland, Montgomery, Ala., Lee A. Jackson, Atty., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Frederick E. Youngman and Joseph Kovner, Attys., Dept. of Justice, Washington, D. C., Ben Hardeman, U. S. Atty. (Godbold, Hobbs & Copeland, Montgomery, Ala., of counsel), for appellant.

Henry E. Simpson, Charles B. Robinson, Birmingham, Ala., Jack Crenshaw, Warren S. Reese, Jr., Montgomery, Ala., Robert C. Garrison, A. Berkowitz, Birmingham, Ala., Fred S. Ball, Montgomery, Ala. (Lange, Simpson, Robinson & Somerville, Birmingham, Ala., of counsel), for appellee.

Before RIVES, JONES, and BELL, Circuit Judges.

GRIFFIN B. BELL, Circuit Judge.

Appellant Jordan was adjudicated a bankrupt on an involuntary petition. The sole asset in the estate was an Alabama motor carrier certificate of convenience and necessity granting the bankrupt, under the laws of Alabama, the right to engage in business as a common carrier for hire between designated points within that state. The trustee in bankruptcy sold the certificate for $40,-

000 and obtained the approval of the Alabama Public Service Commission of the transfer.

The trustee petitioned the Referee to establish the priority of various claimants to the fund. The administrative costs and expenses entitled to priority in payment under § 64, sub. a(1) of the Bankruptcy Act,[1] over those liens subordinated or postponed under § 67, sub. c(1)[2] of the Act totaled $6,513.16. At the time of bankruptcy there were eight judgments and seven federal tax liens filed for record in the county of residence of the bankrupt. The tax liens totaled $26,919.15 and the judgments totaled $21,088.59, each total including interest up to the date of bankruptcy.

The order of filing and hence the order of priority under state law of the various tax and judgments liens is reflected by the following table:

| | LIEN CLAIMANT | AMOUNT | DATE FILED FOR RECORD |
|---|---|---|---|
| 1. | Internal Revenue Service (Income Tax) | $ 3,763.21 | 5–31–57 |
| 2. | Internal Revenue Service (Excise Tax) | 2,834.90 | 11–14–57 |
| 3. | R. C. Hamlett | 14,433.38 | 11–18–57 |
| 4. | Internal Revenue Service (Excise Tax) | 1,688.40 | 2–13–58 |
| 5. | Internal Revenue Service (F.I.C.A. Tax) | 3,994.93 | 2–13–58 |
| 6. | Internal Revenue Service (F.I.C.A. Tax) | 3,622.50 | 2–13–58 |
| 7. | Internal Revenue Service (F.I.C.A. Tax) | 2,565.82 | 2–13–58 |
| 8. | Elizabeth H. DeBuys and Ruth S. DeBuys | 1,117.30 | 3–17–58 |
| 9. | Internal Revenue Service (Income Tax) | 8,499.39 | 4– 1–58 |
| 10. | O. K. Rubber Welders | 61.70 | 4–11–58 |
| 11. | Terminal Transport Co. Inc. | 1,166.35 | 10–23–58 |
| 12. | Huffstutler-Walter Oil Co. | 2,013.79 | 10–23–58 |
| 13. | V. J. Chevrolet Co. Inc. | 478.18 | 11–14–58 |
| 14. | Tire Mart, Inc. | 333.40 | 4–21–59 |
| 15. | Herman Kyle | 1,484.49 | 8–27–59 |

1. 11 U.S.C.A. § 104, sub. a(1).

2. 11 U.S.C.A. § 107, sub. c in pertinent part:
"Where not enforced by sale before the filing of a petition initiating a proceeding under this title, and except where the estate of the bankrupt is solvent: (1) though valid against the trustee under subdivision (b) of this section, statutory liens, including liens for taxes or debts owing to the United States or to any State or any subdivision thereof, on personal property not accompanied by possession of such property, and liens, whether statutory or not, of distress for rent shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 104 of this title * * *."

The Referee in an excellent but unpublished opinion pointed out the concessions by all parties that the federal tax liens were unaccompanied by possession and were therefore subordinated by § 67, sub. c(1) of the Bankruptcy Act to the payment of administrative expenses, and that the liens of the judgment creditors were valid and indefeasible under § 67, sub. a, 11 U.S.C.A. § 107, sub. a, or any other section of the Act.[3] He discussed the various contentions of the parties, the diverse authorities on the question presented, and based his ruling on what he considered a compelling authority, the decision of this court in City of New Orleans v. Harrell, 5 Cir., 1943, 134 F.2d 399.

The result was that the judgment liens were held to be superior to the federal tax liens by reason of the tax liens being subordinated under § 67, sub. c(1) of the Act to the administrative expenses under 64, sub. a(1) of the Act. The order or priority of payment was set up therefrom to be first, judgment liens, then the expenses of administration, with the balance of the fund to be paid the government on the tax liens. The District Court affirmed and this appeal followed. Jurisdiction is based on 11 U.S.C.A. § 47, and 28 U.S.C.A. § 1291.

The interest of the bankrupt lies in the result that only $12,398.25 will be paid under the holding on the non-dischargeable tax claims, whereas under his contention and in the view of the government the tax liens should have been accorded their priority, as hereinbefore shown by the table, over the judgment liens on a first in time, first in right basis.[4]

The question presented, one of fundamental importance in the administration of the Bankruptcy Act, is whether postponement of payment of tax liens under § 67, sub. c of the Act to payment of administrative expenses under 64, sub. a (1) of the Act, subordinates the tax liens to otherwise inferior judgment liens. Stated differently, does the postponement provision by necessary implication advantage judgment creditors under these circumstances, or is it the statutory intent that the priority status as between pending liens remain undisturbed?

Absent bankruptcy the various liens, both tax and judgment, would have been paid on a first in time, first in right basis. United States v. City of New Britain, 1954, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520; and 26 U.S.C.A. § 6323. The federal tax liens would be superior to all save the Hamlett and DeBuys judgments by reason of earlier recording dates. We must determine whether these otherwise superior tax liens not only are postponed in payment to the administration expenses but also are subordinated to the judgment liens by reason of the postponement provision on the reasoning that the otherwise inferior judgment liens have not been postponed or subordinated by the statute.

One of the first opinions on this question was that of In re Empire Granite Co., M.D.Ga., 1942, 42 F.Supp. 450. As is pointed out in 4 Collier on Bankruptcy, § 67.27, p. 298, this case stands for the proposition that § 67, sub. c(1) does not effect the relative priority of the tax liens and the liens of the judgment creditors, the government being entitled to payment of any of its prior liens, subject

---

3. This is contrary to one of the positions of appellants here that the judgment liens were statutory liens within the sweep of the statute, and that the judgment creditors did not have valid liens against the property involved.

4. Judgment creditor Hamlett by brief contends that the Bankrupt is not a proper party to object. We so held in Gregg Grain Co. v. Walker Grain Co., 5 Cir., 1922, 285 F. 156, cert. den., 262 U.S.

746, 43 S.Ct. 522, 67 L.Ed. 1212, on the premise that the Bankrupt, being insolvent, has no interest in the manner of distribution of his assets among his creditors. The Bankrupt may have an interest in view of the fact that the tax claims are not dischargeable but the question is academic in view of the appeal by the government. See generally 3 Collier on Bankruptcy (14th Ed.), § 57.17, p. 252, et seq.

however to having the expenses of administration paid out of the amount of these prior liens. Applying that doctrine here, and referring again to the table setting out the various liens, the government would retain its priority under liens numbered 1 and 2 subject to the payment of the administration expenses. This gives effect to the first in time, first in right principle as modified by the statute. $84.95 will be left out of the total of the two prior tax liens after the payment of the administration expenses and this sum will be paid to the government. The balance available for distribution will then be paid on the succeeding claims in the order of their priority. The Hamlett judgment, being lien numbered 3 on the table would be entitled to second priority, the tax liens numbered 4, 5, 6, and 7 totaling $11,785.65 would be entitled to third priority, the DeBuys judgment would be entitled to fourth priority, and the balance of $5,979.56 in the fund would be paid on the amount of the tax lien numbered 9 on the table.

We believe this to be a correct application of the statutory scheme, the purpose of which was to insure payment of administrative expenses and small wage claims. 4 Collier on Bankruptcy, (14th Ed.) § 67.20, p. 189. And it accords with the well reasoned opinions of California State Department of Employment v. United States, 9 Cir., 1954, 210 F.2d 242 and In the Matter of American Zyloptic Co., Inc., E.D., N.Y., 1960, 181 F.Supp. 77. The subordination statute made no changes in priority as between liens, but merely deferred the payment of stated liens to the extent of satisfying the specified unsecured claims. There is nothing in the statute requiring subordination of the tax liens here to the liens of the judgment creditors which are later in time and junior in right. The

priority status of the tax liens, valid against the trustee under the Act, and as determined under the applicable law, is not disturbed.[5] The change applies to the payment of the lien claims, but only to those set out in the statute, and not to the judgment liens here. The unsecured claims for expenses of administration remain inferior and subject to the judgment liens. Such efficacy as they have comes from a *pro tanto* substitution for such priority in payment as the tax liens may have.

Thus it is that the rule may be stated to be that the tax liens, prior in time and superior in right to the judgment liens are entitled to payment on the basis of first in time, first in right just as in any non-bankruptcy proceeding, except to the extent that amounts payable on the tax liens may be required to pay costs of administration.

Our holding in City of New Orleans v. Harrell, supra, is not controlling. There it was decided that a chattel mortgage valid under the Louisiana law was not subordinated to the claim of the city resting upon an inchoate lien for taxes which was incomplete before bankruptcy and which tax lien had not been perfected in the bankruptcy court so as to gain priority. The ratio decidendi of that case cannot be extended to embrace the question here presented. Of course, there is obiter dictum in both the majority and concurring opinions to the effect that the tax claim of the city is subordinated to the lien of the mortgage by virtue of § 67, sub. c(1), apparently on the theory that it follows from the fact that the lien of the city is, and the mortgage is not, postponed to the payment of expenses of administration and wage claims. In any event, what was said there in this regard was not necessary to the holding, and was dictum.[6]

5. The general rule as expressed in Wilson v. Duncan, 5 Cir., 1932, 61 F.2d 515; and Brookhaven Bank & Trust Company v. Gwin, 5 Cir., 1958, 253 F.2d 17 is that all obligations of a legal and equitable nature, except those expressly effected by the terms of the Act, remain undisturbed by Bankruptcy.

6. The courts in both In re Quaker City Uniform Co., infra, and In the Matter of American Zyloptic Co., Inc., supra, char-

This question has been also considered in the case of In re Quaker City Uniform Company, 3 Cir., 1956, 238 F.2d 155; followed in In re Einhorn Bros., Inc., 3 Cir., 1959, 272 F.2d 434. The court there read an implication into the statute requiring subordination or postponement of inferior liens to superior liens under the state law where the superior liens were subordinated under the Act, and with the result that the order of payment became expenses of administration and wage claimants under § 64, sub. a of the Act, and then landlord liens followed by mortgage liens. We do not consider this construction, which considered liens not subordinated under the statute to be within its reach, to be either justified or required to give full meaning and effect to the intent of Congress which was to postpone in payment those liens set out in § 67, sub. c(1) to the payment of unsecured claims for expenses of administration and wages in an amount up to but not exceeding the sum of the liens subordinated, but with no resulting alteration of the priorities between lien holders.[7]

The judgment appealed from is reversed and remanded for further proceedings not inconsistent herewith.

JONES, Circuit Judge (dissenting).

I do not regard the statements in the Harrell case as dictum as does the majority. The Referee, according to my notion, was correct in believing he was bound by that decision. I believe he correctly construed the opinion in that case. I think Collier read the Harrell case as the Referee read it. 4 Collier on Bankruptcy, 14th Ed. 298, § 67.27[3] n. 42. I do not think there is such a palpable injustice resulting from following Harrell as requires a departure from it, nor does it seem to me that any impelling public policy demands that we now declare a different rule. If it is to be overruled

would it not be better to have it expressly done rather than to leave Harrell standing as a precedent but subject to the distinction of this case, a distinction which appears to me to be an artificial one?

acterized these portions of City of New Orleans v. Harrell as dictum.

7. The circuity of liens problem has received widespread attention with many suggest-

ed solutions. See 4 Collier on Bankruptcy, 14th Ed., § 67.27(3), p. 296, et seq., and Nadler, The Law of Bankruptcy, § 679, 1961 cumulative supplement.