**In re Dick M. DIVINE and Tammy L. Divine, Debtors.**

**Bankruptcy No. 4–90–5443.**

United States Bankruptcy Court, D. Minnesota.

May 24, 1991.

---

Kenneth E. Keate, St. Paul, Minn., for debtors.

Douglas W. Hinds, Sp. Asst. U.S. Atty., Thomas K. Overton, Sp. Asst. Atty. Gen., Tax Litigation Div., St. Paul, Minn., for creditors.

## ORDER DENYING CONFIRMATION

Robert J. KRESSEL, Chief Judge.

This case came on for hearing on the objections of the Internal Revenue Service and the Minnesota Department of Revenue to confirmation of the debtors' Chapter 13 plan. Kenneth E. Keate appeared on behalf of the debtors. Douglas Hinds, Special Assistant United States Attorney, appeared on behalf of the Internal Revenue Service and Thomas K. Overton, Special Assistant Attorney General, appeared on behalf of the Minnesota Department of Revenue. This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and Local Rule 103(b). This is a core proceeding under § 157(b)(2)(L). Based on the memoranda and arguments of counsel, and the file in this case, I make the following memorandum order.

## FACTUAL BACKGROUND

In March of 1983, the debtors had H & R Block prepare their federal and state income tax returns for the years 1979, 1980, 1981, and 1982. The debtors did not file these returns.

On August 23, 1989, the debtors filed their federal income tax returns for the years 1985, 1986, 1987, and 1988 without payment of any tax. On various days in October 1989, the IRS assessed the tax on these returns and on April 13, 1990, the IRS filed a Notice of Tax Lien for the 1985, 1986, 1987, and 1988 tax, interest and penalties.

On August 7, 1990, the debtors filed their federal income tax returns for the years 1979, 1980, 1981, 1982, 1983, 1984, and 1989 without payment of any tax. On various days in October and November of 1990 the IRS assessed tax, interest and penalties. The debtors also filed their state income tax returns for the years 1979–1989 without payment of any tax.

On September 27, 1990, the debtors filed this Chapter 13 case. The debtors listed

their home mortgage, a 1989 truck loan and the tax lien as secured debts. The only unsecured debts listed were their federal and state income tax liabilities.

The IRS and the Minnesota Department of Revenue filed claims for the tax, interest and penalties for the years 1979–1989. The debtors have not objected to their claims.

## DEBTORS' PROPOSED TREATMENT OF THE CLAIMS

*Secured Claims* The debtors propose to sell their home within four years and pay off their home mortgage and the IRS's secured claim. The debtors' anticipate that approximately $28,550.00 will be available to apply to the IRS tax lien once they sell their home.[1]

*Priority Claims* Paragraph 2 of the debtors' plan provides monthly payments of $400 to pay all priority claims in full. Paragraph 6 sets up an artificial procedure to determine the amount of the priority claims.

*Non–Priority Unsecured Claims* The plan separately classifies the non-priority unsecured claims into 2 classes, class 5 and class 6. Class 5, as proposed, consists of the non-priority unsecured tax and interest on the tax claims except to the extent it amounts to interest on penalties. The plan proposes to pay class 5, 10% on the dollar. Class 6 consists of unsecured penalties and interest on penalties. Based on principles of subordination, the plan proposes to pay nothing to class 6.

The IRS and Department of Revenue both objected to confirmation of the debtors' plan.

## DISCUSSION

The dispute in this case revolves around whether the debtors' plan properly treats the secured, priority unsecured and non-priority unsecured claims of the IRS and the Department of Revenue.

## IRS SECURED CLAIM

The IRS filed a proof of claim on December 4, 1990 and amended that claim on December 17, 1990. The IRS's claim for tax, interest and penalties totalled $94,547.49. Below is a summary of the IRS's claim.

|      | Tax      | Interest | Penalty  | Date Filed | Date Assessed |
| ---- | -------- | -------- | -------- | ---------- | ------------- |
| 1979 | 513.00   | 1,279.13 | —[2]     | 8/7/90     | 10/15/90      |
| 1980 | 789.00   | 1,745.02 | —[2]     | 8/7/90     | 10/15/90      |
| 1981 | 1,528.00 | 2,890.77 | —[2]     | 8/7/90     | 10/15/90      |
| 1982 | 2,914.00 | 4,230.62 | —[2]     | 8/7/90     | 10/8/90       |
| 1983 | 3,809.00 | 4,559.71 | —[2]     | 8/7/90     | 10/8/90       |
| 1984 | 6,212.00 | 5,863.78 | —[2]     | 8/13/90    | 11/5/90       |
| 1985 | 5,681.00 | 4,194.44 | 2,718.48 | 8/23/89    | 10/30/89      |
| 1986 | 7,583.00 | 4,259.33 | 3,564.01 | 8/23/89    | 10/9/89       |
| 1987 | 4,341.00 | 1,344.93 | —[3]     | 8/23/89    | 10/16/89      |
| 1988 | 5,028.00 | 897.85   | —[3]     | 8/23/89    | 10/2/89       |
| 1989 | 4,720.00 | 283.91   | —[3]     | 8/7/90     | 10/1/90       |

The IRS's claim is deemed allowed because the debtors did not object to the claim as filed. 11 U.S.C. § 502(a). In-

---

1. Although the plan itself is ambiguous, it is clear that the equity from the sale of the home is to pay only the IRS's secured claim. GMAC's secured claim will not be paid out of proceeds from the sale of the debtors' home.

2. The total pre-petition penalty claimed for the non-priority unsecured tax liability for the years 1979–1984 is $8,513.04.

3. The total pre-petition penalty claimed for the priority unsecured tax liability for the years 1987–1989 is $5,084.47.

stead, the debtors chose to deal with their tax liabilities under the plan.

As a matter of tax law, the IRS's tax lien consists of the total claims filed by the IRS for tax, interest and penalties. The tax lien statute states:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321. Tax liens arise at the time taxes are assessed. 26 U.S.C. § 6322. Therefore, the lien for 1985–1988 tax, interest and penalty arose in October of 1989. The lien for 1979–1983 and 1989 tax, interest and penalty arose in October of 1990. Finally the lien for the 1984 tax, interest and penalty arose in November of 1990. The IRS, by filing a Notice of Tax Lien in Hennepin County against the debtors' homestead, on April 13, 1990, perfected the lien for the 1985–1988 tax, interest and penalties. Thus, the IRS has a perfected lien for the tax, interest and penalties for the years 1985–1988 on the debtors' homestead.

In this case, the IRS's tax lien exceeds the amount of the debtors' home equity. Therefore, the IRS's claim is secured only to the extent of the amount of the home equity, $28,550.00. 11 U.S.C. § 506(a). The remainder of the tax lien claim becomes an unsecured claim.

■ While it is clear what *amount* of the IRS claim is secured, the debtors and the IRS dispute which years and what elements (tax, interest and penalty) are secured.

The debtors argue that the Supreme Court decision in, *United States v. Energy Resources Co.*, ——— U.S. ———, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), permits them to determine the treatment of different years' tax liability under the plan. Under this theory, the debtors' plan classifies both the 1980–1984 [4] tax and interest on tax and the 1980–1989 penalties as a non-priority unsecured claim. The plan classifies a portion of the 1985–1988 tax and interest on tax as a secured claim and a portion as priority and non-priority unsecured claims.[5] The 1989 tax and interest on tax is classified as a priority unsecured claim.

The IRS disagrees with the debtors as to the right to determine the treatment of the IRS's claim. The IRS's amended claim provides that the secured claim will consist of the 1985 and 1986 tax, interest and penalties. The priority unsecured claims will consist of the 1987–1989 tax and interest. The 1979–1984 tax, interest and penalties and the 1987–1989 penalties will make up the non-priority unsecured claim.

*Energy Resources Co.* involved a corporation that filed a Chapter 11 case. The issue in *Energy Resources Co.* was whether the debtor could apply payments under a confirmed plan toward "trust fund" taxes before other taxes. The debtors wanted to ensure that if the reorganization was not successful, the individuals responsible for collecting the taxes would be relieved from liability. The Court found that the bankruptcy court, through its equitable powers, could order that the plan payments be applied to the trust fund taxes first when it is necessary for the success of the reorganization. *Energy Resources Co.*, 110 S.Ct. at 2143.[6]

In this case, the debtors argue this holding should be broadly construed to allow them to determine the amount of each tax year liability and how it will be dealt with under the plan.

---

**4.** The debtors' plan omits any treatment of the tax liability for the year 1979.

**5.** The debtors indicate that the tax and interest on tax for 1985–1988 totals $31,471.95 of which $28,550 is secured and $1,074.83 (representing the 1987 and 1988 unsecured portion) is priority

and $1,847.12 (representing the 1985 and 1986 unsecured portion) is non-priority unsecured.

**6.** The Supreme Court posed the issue as a question of the bankruptcy court's power. More properly, the issue is whether the debtor's plan was confirmable.

*Energy Resources Co.* is distinguishable from this case in that it deals with the *type* of tax that will be paid first under the plan. The debtors in *Energy Resources Co.* had to deal with both trust fund and non-trust fund taxes. If the plan was not successful in satisfying the overdue trust fund taxes, the IRS could look to the "responsible persons" to satisfy that tax liability. The debtors in that case, wanted their plan payments to be applied to the trust fund taxes first to guarantee that the responsible persons would not later be held accountable for payment of the trust fund taxes. Notably however, the plan provided for paying all taxes in full. It was only the order of payment that was in dispute.

The debtors in this case want to decide the treatment of the tax liability for each tax year. The debtors propose to allocate portions of certain years' tax liability to a secured status and allocate other portions to an unsecured status. This method results in determining the total amount of the taxes, interest and penalties the debtors will be required to pay under the plan. The debtors' proposed plan minimizes the amount they would be required to pay, thereby, essentially allowing most of their tax debt to be discharged. In this case, the debtors are simply attempting to rearrange the tax claims in order to avoid paying as much as possible. This is not what *Energy Resources Co.* contemplated and I see no reason to apply the debtors' broad interpretation of *Energy Resources Co.* to the facts of this case.

Although neither the debtors nor the IRS gave me any guidance as to how to best determine the amount of the secured claim,[7] I have decided that using the date the taxes were assessed is the appropriate method to determine what tax liability is secured and what liability is left as unsecured. 26 U.S.C. § 6322 states:

> Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the

liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

Thus, tax liens attach in the order of their assessment. Since the lien attaches once the taxes are assessed, the statute determines the priority among liens based on the date of assessment. The tax lien filing only determines the tax lien's priority as against other secured claims. 11 U.S.C. § 6323. The filing is the equivalent of perfection under the Uniform Commercial Code. Therefore, I will rely on the date the taxes, interest and penalties were assessed to determine what tax year liability is secured.

Although the 1985–1988 tax returns were all filed on August 23, 1989, the taxes were not assessed chronologically. The returns were actually assessed as follows:

| Date Assessed | Tax Year |
|---|---|
| 10/02/89 | 1988 |
| 10/09/89 | 1986 |
| 10/16/89 | 1987 |
| 10/30/89 | 1985 |

Using the IRS assessment date as the basis to determine what tax liability is a secured claim and what is left as an unsecured claim, I will begin with the first year actually assessed, 1988. Since 26 U.S.C. § 6321 includes the amounts for interest and penalties in determining what constitutes a tax lien, I will subtract all of the tax, interest and penalty assessed for 1988 from $28,550. The next step is to subtract the 1986 tax, interest and penalty from the remaining amount secured by the lien. Therefore, all of the 1988 and 1986 tax, interest and penalties are secured claims. Additionally, approximately 71% of the 1987 tax, interest and penalty will be secured by the tax lien. The remaining 29% of the 1987 tax and interest and penalty and all of the 1985 tax, interest and penalty become unsecured claims.

---

**7.** The IRS simply argues that it is the 1985 and 1986 taxes, interest and penalty that are secured

without stating any reason. Perhaps it simply chose its earliest two years.

|  | Tax | Interest | Penalty |
|---|---|---|---|
| 1988 | 5,028.00 secured | 897.85 secured | 1,759.80 [8] secured |
| 1986 | 7,583.00 secured | 4,259.33 secured | 3,564.01 secured |
| 1987 | 3,076.96 secured | 953.31 secured | 1427.74 secured |
|  | 1,264.04 unsecured | 391.62 unsecured | 586.52 unsecured |
| 1985 | 5,681.00 unsecured | 4,194.44 unsecured | 2,718.48 unsecured |

Thus, the secured claim of $28,550.00 will consist of the 1988, 1986 tax, interest and penalties and approximately 71% of the 1987 tax, interest and penalty.

## IRS PRIORITY UNSECURED CLAIM

The IRS's unsecured claims need to be classified as priority or non-priority.[9]

Section 507, dealing with priorities, states:

(a) The following expenses and claims have priority in the following order:

(7) Seventh, allowed unsecured claims of governmental units; only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition; ...

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

11 U.S.C. § 507(a)(7).

■ I will deal first with the remaining 29% of the 1987 tax, interest and penalties. The tax due for 1987 falls under § 507(a)(7)(A)(i), as tax due after three years before the date the petition was filed. Therefore, the remaining 29% of the 1987

tax should be classified as a priority unsecured claim. The remaining interest for 1987 is also entitled to priority status. Under § 507(a)(7)(G), the interest is considered to be a penalty to compensate the government "for the money's nonavailability during the nonpayment period." *In re Craner*, 110 B.R. 111, 119 (Bktcy. N.D.N.Y.1988) *rev'd in part In re Craner*, 110 B.R. 124 (N.D.N.Y.1989). Thus, the remaining 29% of the 1987 tax and interest, totalling $1,655.66, are to be classified as a priority unsecured claim.

■ The remaining 29% of the penalty portion of the 1987 tax liability is not entitled to priority under § 507(a)(7)(G). The penalty assessed against the debtors was not to compensate the government for actual pecuniary loss. *Id.*, at 120. The additional assessed penalty is punitive in nature and not entitled to priority. *In re Henderberg*, 108 B.R. 407, 417 (Bktcy. N.D.N.Y. 1989). Therefore, the remaining penalty claim of $586.52 is not entitled to priority unsecured status.

The same analysis also applies to the entire 1989 tax liability. The tax and interest totalling $5,003.91, are entitled to priority status under § 507(a)(7)(A) & (G). Since the penalty claim is punitive in nature, the 1989 penalty claim of $1,310.41 is not entitled to priority status.

## IRS NON–PRIORITY UNSECURED CLAIM

The remainder of the tax claims are not entitled to priority under any subsection of § 507(a). Therefore, the remainder of the tax claims are to be classified as non-priority unsecured claims. The non-priority unsecured claims will consist of the tax, interest and penalties for the tax years of 1979–1985 totalling $57,440.99, and 1987 and 1989 penalties totalling $1,896.93.

---

**8.** Based on the numbers specified in the IRS's original and amended claims, it is possible to determine the amount of penalty assessed for each of the 1987, 1988, and 1989 tax years.

**9.** This is important since a Chapter 13 plan must provide full payment for priority claims. 11 U.S.C. § 1322(a)(2).

## SUMMARY OF THE IRS CLAIM

Therefore, I find:

The IRS secured claim consists of:

1988 tax, interest and penalty of $7,685.65;

1986 tax, interest and penalty of $15,406.34;

1987 71% of the tax, interest and penalty of $5,458.01;

Total $28,550.00

The priority unsecured claim consists of:

1987 29% of the tax and interest of $1,655.66;

1989 tax and interest of $5,003.91;

Total $6,659.57

The non-priority unsecured claim consists of:

1979–1985 tax, interest and penalty of $57,440.99;

1987 penalty of $586.52;

1989 penalty of $1,310.41;

Total $59,337.92

## DEPARTMENT OF REVENUE CLAIM

In August of 1990, the debtors filed their state income tax returns for years 1979–1989 without payment of any of the tax liability. The Minnesota Department of Revenue assessed the tax for these 10 years on August 6, 1990. The Department of Revenue filed a priority unsecured claim totaling $10,104.42 in tax and interest and an unsecured claim for $1,795.37 in penalties.

As with the IRS claim, the debtors did not object to the claim filed by the Department of Revenue and instead chose to deal with their state tax liability through payments under their plan.

The debtors' plan proposes to treat the tax and interest on tax for the years 1987, 1988, and 1989 as a priority unsecured claim and the remainder of the claim as a non-priority unsecured claim. The Department of Revenue objects to this classification of the claim. The Department of Revenue claims that all of the tax and interest

should be treated as a priority unsecured claim under 11 U.S.C. § 507(a)(7)(A) and that the penalty should be treated as a non-priority unsecured claim.

As discussed earlier with respect to the IRS claim, under § 507(a)(7)(A) & (G) the Department of Revenue has a priority unsecured claim for the 1987–1989 tax and interest amounting to $1,722.70. The remainder of the Department of Revenue's claim, the 1979–1986 tax and interest and the 1979–1989 penalties totalling $10,177.09, is a non-priority unsecured claim.

## EQUITABLE SUBORDINATION

Section 510 allows for subordination of certain agreements and claims. Section 510(c) deals with the principle of equitable subordination. Specifically § 510(c) states:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; ....

11 U.S.C. § 510(c).

The debtors propose two different kinds of equitable subordination under their plan.

1. The debtors want the IRS's secured penalty claim subordinated to all other secured and unsecured claims.

2. The debtors want the IRS's and the Department of Revenue's unsecured penalty claims subordinated to all other unsecured claims.[10]

In the past, subordination was only available when a creditor engaged in some form of inequitable conduct. *Wegner v. Grunewaldt*, 821 F.2d 1317, 1323 (8th Cir.1987) (*citing Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Farmers Bank of Clinton v. Julian*, 383 F.2d 314, 322–23 (8th Cir.), *cert. denied*, 389 U.S.

---

**10.** Since there are no other unsecured creditors, it is not clear why the debtor did not put all the unsecured claims in one class.

1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967); *In re Kansas City Journal–Post Co.*, 144 F.2d 791 (8th Cir.1944)).

In *In re Mobile Steel Co.*, the Fifth Circuit described conditions when application of equitable subordination is appropriate:

(i) The claimant must have engaged in some type of inequitable conduct.

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977) (citations omitted).

Recently, when dealing with subordination of tax claims, courts have allowed subordination of the tax penalty out of fairness to the other creditors, rather than looking for inequitable conduct on the part of a creditor. *Schultz Broadway Inn v. U.S.*, 912 F.2d 230, 234 (8th Cir.1990).

In *In re Merwede*, the court addressed the issue of equitable subordination in a Chapter 13 case and concluded:

Although earlier decisions did not permit the equitable subordination of claims unless the claiming creditor was guilty of some misconduct, courts now recognize that the subordination of penalty claims is necessary to avoid the inequity of requiring innocent creditors to share the cost of a debtor's misconduct.

*In re Merwede*, 84 B.R. 11, 14 (Bktcy. D.Conn.1988); *see also In re Virtual Networks Services Corp.*, 902 F.2d 1246 (7th Cir.1990); *In re Vitreous Steel Products Co.*, 911 F.2d 1223 (7th Cir.1990). This rationale developed in part after courts looked to see how Chapter 7 cases dealt with penalty claims. *Schultz Broadway Inn*, at 233–34. Under Chapter 7, payments for penalty claims are fourth on the list for priority distribution. 11 U.S.C. § 726(a)(4). This means that penalty claims will not be paid unless all other unsecured claims get paid in full. Although this generally does not happen, the rationale that some unsecured creditors should not reap the benefit of payment of penalty claims to the detriment of the other unsecured creditors, has carried over to Chapter 11 and Chapter 13 cases. In this case, I do not have to decide if this rationale is correct, for even if the analysis is correct, it does not help the debtors.

■ *Secured Penalty Claims* The courts which have accepted this rationale have not dealt with the question of whether secured penalty claims can be subordinated to the claims of general unsecured creditors. I see no basis to extend the subordination rationale to secured penalty claims. Equitable subordination is allowed to ensure fairness among the unsecured creditors. In the absence of inequitable conduct, subordination has no applicability to secured penalty claims.

*Unsecured Penalty Claims* Subordination of unsecured penalty claims is allowed to ensure fairness to other unsecured creditors. In this case, there are no other unsecured creditors. Ultimately, under the debtors' plan the same amount of money would go to the same creditors (the IRS and the Department of Revenue) whether or not subordination of the unsecured penalty claims occurs. Therefore, equitable subordination is not available in this case.

## BAD FAITH

Both the IRS and the Minnesota Department of Revenue object to confirmation of the debtors' plan on the basis that the plan was proposed in bad faith. Because the plan's treatment of secured, priority and unsecured claims is inconsistent with this opinion, the plan is unconfirmable and I do not have to reach the issue of whether the plan was proposed in bad faith.

## CONCLUSION

The debtors' plan cannot be confirmed because it does not comply with 11 U.S.C. § 1322.

THEREFORE, IT IS ORDERED:

Confirmation of the debtors' plan dated September 20, 1990 and filed September 27, 1990, is denied.