**In re David Brian BURGESS and Cheryl Gail Burgess, Debtors.**

**Bankruptcy No. 93–60433.**

United States Bankruptcy Court, E.D. Texas, Tyler Division.

April 21, 1994.

---

Robert Gordon Hindman, Tyler, TX.

Cynthia Messersmith, Dept. of Justice, Dallas, TX.

Michael Gross, Tyler, TX.

### ORDER

C. HOUSTON ABEL, Chief Judge.

Before the Court is Debtors' objection to the proof of claim filed by the Internal Revenue Service ("IRS"). After reviewing the objection, the briefs filed and the relevant law, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

### JURISDICTION

The Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

---

**1.** The tax lien was filed on or about May 28, 1992, and secures tax periods 1988 through 1990.

### FACTS

The facts of this matter are relatively undisputed. The parties agree that the collateral subject to the tax lien filed by the IRS has a value of $68,336.28.[1] Pursuant to the proof of claim dated January 10, 1994, the IRS asserts that it has the following claim:[2]

| | |
|---|---|
| secured claim | $68,336.28 |
| unsecured priority claim | $50,459.66 |
| unsecured general claim | $29,247.10 |

The secured claim includes taxes, interests and penalties due for tax period 1988 and part of 1989. Specifically, the secured claim consists of the following:

| Tax Period | Tax Due | Penalty | Interest | Total |
|---|---|---|---|---|
| 12/31/88 | $14,573.67 | $15,952.60 | $14,888.40 | $45,414.67 |
| 12/31/89 | $22,921.61 | $0.00 | $0.00 | $22,921.61 |
| | $37,495.28 | $15,952.60 | $14,888.40 | $68,336.28 |

In apportioning the claim to the collateral, the IRS started with the oldest tax year, 1988, and applied the tax, penalty and interest due in that order. The IRS repeated this process for tax year 1989 until the liability equaled the value of the collateral. Thus, all of the tax, penalty and interest for the 1988 tax year ($45,414.67) and $22,921.61 of the taxes due for the 1989 tax year are asserted by the IRS to comprise its secured claim. The remainder of the taxes and interests attributable for tax years 1989 and 1990 ($50,459.66) are asserted as an unsecured priority claim, with all penalties attributable for tax year 1989 forward ($29,247.10) asserted as an unsecured general claim.

The Debtors object to how the IRS apportioned its claim to the collateral. Debtors assert that the IRS lien should first secure the payment of all taxes due for each tax year, excluding penalties and interests. Then any tax amount remaining unsecured, along with all interest due, should be an unsecured priority claim. Finally, all penalties due should be classified as an unsecured general claim. Based on this apportionment, the unsecured general claim increases to approximately $45,000.00. Because the Debtors' Chapter 13 plan proposes a *de minimis* return to general unsecured creditors, almost all of the approximate $45,000.00 in penalties would be discharged.

---

**2.** The claim is based upon unpaid income taxes, interests and penalties for 1988 through 1992.

## CASE LAW PRIOR TO *ENERGY RE-SOURCES*

■ Prior to 1990, the ability of a debtor to direct how payments to the IRS were to be applied was generally based on whether the payments were classified as voluntary or involuntary. If the payments were characterized as voluntary, the debtor could designate how the payments were to be applied. *Nat. Bank of the Commonwealth v. Mechanics' Nat. Bank,* 94 U.S. 437, 24 L.Ed. 176 (1876). If the payments were involuntary, the IRS had the right to apply the payments as it saw fit. *Hewitt v. United States,* 377 F.2d 921, 925 (5th Cir.1967). An involuntary payment of federal taxes is defined as:

> [a]ny payment received by agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor.

*Amos v. Commissioner,* 47 T.C. 65, 69 (1966). This Court is in agreement with the majority of courts that payments made to the IRS pursuant to a debtor's plan of reorganization are involuntary.[3] *See, e.g., In re Jehan–Das,* 925 F.2d 237, 238 (8th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *In re DuCharmes & Co.,* 852 F.2d 194, 196 (6th Cir.1988); *Matter of Ribs–R–Us, Inc.,* 828 F.2d 199, 203 (3rd Cir. 1987); *In re Mikrut,* 79 B.R. 404 (Bankr. W.D.Wis.1987); *In re Frost,* 47 B.R. 961, 965 (D.Kan.1985); 1A Collier on Bankruptcy ¶ 22.03. The fact that Chapter 13 is a pure voluntary proceeding is not relevant to whether the payments to the IRS are voluntary. The Debtors cannot make a distribution to the IRS under a plan until after the plan is confirmed by the Court. Payments to the IRS under a confirmed plan would result from a legal proceeding in this Court; i.e., the confirmation hearing. Whether the payments to the IRS under a confirmed plan are voluntary is inapposite to the voluntary nature of a Chapter 13 proceeding. It is the "involvement of the court and not the type of bankruptcy which makes payments by a debtor involuntary." *Frost,* 47 B.R. at 964–65.

## CASE LAW AFTER *ENERGY RE-SOURCES*

■ In 1990, the Supreme Court addressed the ability of a debtor to direct how payments were to be applied to taxes. *United States v. Energy Resources Co.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990). In *Energy Resources,* the Supreme Court held that a bankruptcy court has the authority pursuant to its equity powers[4] to direct how the IRS applies payments from a debtor if it is "necessary to the success of a reorganization plan." *Energy Resources,* 495 U.S. at 549, 110 S.Ct. at 2142. The Supreme Court held that this authority exists irrespective of whether the payments under a confirmed Chapter 11 plan were characterized as involuntary or voluntary. *Id.*

In reaching its holding, the Supreme Court "side-stepped" the issue of the voluntariness of payments made to the IRS under a confirmed plan. Although the Supreme Court determined in *Energy Resources* that it need not address the voluntary nature of the payments based on the facts before the Court, the Supreme Court did not necessarily eliminate the need of this determination. If it was the intention of the Supreme Court to completely abrogate the distinction of whether the payments are classified as voluntary or involuntary, the Court could easily have stated that in its opinion. Instead, the distinction is only abrogated when a court finds that the bankruptcy policy of favoring reorganization would be furthered if the court could use its equity powers to direct how the payments were to be applied by the IRS.

Courts which have interpreted *Energy Resources* have basically limited the holding to its facts. *See In re Kare Kemical, Inc.,* 935 F.2d 243, 244 (11th Cir.1991); *Jehan–Das,* 925 F.2d at 238; *In re Equipment Fabricators,* 127 B.R. 854, 858 (D.Ariz.1991); *In re Gregory Engine & Machine Services, Inc.,* 135 B.R. 807, 810 (Bankr.E.D.Tex.1992); *In re Visiting Nurse Ass'n,* 128 B.R. 835, 837

---

**3.** The Court is of the opinion that it is irrelevant as to whether the plan is one under Chapter 11 or Chapter 13. Under either chapter, the plan is a reorganization of debts.

**4.** 11 U.S.C. § 105(a).

(Bankr.M.D.Fla.1991). A significant fact in *Energy Resources* is that the plan in question provided for the *full* payment of all taxes. Therefore, the net effect in *Energy Resources* is that the entire tax liability was to be paid in full notwithstanding how the payments were apportioned.

Here, the Debtors are not proposing to pay the entire tax liability. Instead, the Debtors desire to control which portion of the tax liability is secured by the collateral in order to discharge nearly all the liability for the penalties incurred. The Court is of the opinion that *Energy Resources* does not encompass a situation where the debtor wishes to reapportion certain tax liability from secured to unsecured in order to discharge a larger portion of the liability. *Energy Resources* merely addresses a court's power to direct payments to various tax liabilities and not the reapportionment of tax liability secured by collateral. *Energy Resources* should not be interpreted as enlarging a bankruptcy court's equitable powers to include the avoidance of a tax liability "which would in the ordinary course of things be nondischargeable." *In re Lambert*, 124 B.R. 345, 347 (Bankr.W.D.Okla.1991). Thus, the Debtors' reliance on *Energy Resources* is misplaced. The Court will not dictate how the IRS apportions the Debtors' tax liability to the collateral subject to the tax lien, especially where the sole basis for doing so is to avoid certain tax liabilities. *See In re Preferred Door Co., Inc.*, 990 F.2d 547, 550–51 (10th Cir.1993) ("bankruptcy courts' equitable authority does not extend to altering the Code's comprehensive scheme of priorities"); *In re Bates*, 974 F.2d 1234, 1235–36 (10th Cir.1992) (*Energy Resources* does not apply to a debtor's attempt to "change the classification of debts from one category, where full payment is required, to another category where less than full payment is required"); *In re Divine*, 127 B.R. 625 (Bankr.D.Minn. 1991).

## FIRST IN TIME APPROACH

 The Debtors assert that what is secured by the lien should be determined by a "first in time, first in right" approach. As authority for this argument, the Debtors rely on *Jordan v. Hamlett*, 312 F.2d 121 (5th Cir.1963). However, the Debtors' reliance on *Jordan* is misplaced. In *Jordan*, the Fifth Circuit was determining the respective priority of various liens filed by different creditors, including seven liens filed by the IRS. The priority of the liens was important because the value of the collateral subject to the liens was less than the indebtedness the liens purportedly secured. In deciding which liens were secured, the Fifth Circuit applied the first in time approach and held that the date of filing of the lien controls. *Jordan*, 312 F.2d at 123–24. Accordingly, the Fifth Circuit started with the first filed lien and applied that lien to the collateral. The Fifth Circuit continued this approach until the amount of the debts secured by the liens equaled the value of the collateral. However, the first in time approach was only used by the Fifth Circuit because there were different creditors alleging that their liens were superior. The Fifth Circuit did not use the first in time approach to determine the priority of various liens filed by the same creditor. Specifically, the Fifth Circuit held that because the IRS filed the first two liens, *both* of those liens were entitled to first priority over the other liens. *Jordan*, 312 F.2d at 124. No distinction was made regarding which of the two liens was entitled to a higher priority. Similarly, the Fifth Circuit held that four other liens filed by the IRS (liens number 4 through 7) were each entitled to third priority because no creditor filed an intervening lien. *Jordan*, 312 F.2d at 124. As with the prior IRS liens, the Fifth Circuit made no distinction regarding which of the four liens was superior. Therefore, the Fifth Circuit implicitly recognized that the first in time approach is not applicable to determine the priority of various liens filed by the *same* creditor. The approach is useful to resolve disputes among *different* creditors with competing liens on the same property. *In re Hubler Rentals, Inc.*, Bankr. No. 75–789, 1979 WL 1465, *2 (E.D.Pa. Sept. 27, 1979).[5]

---

5. *But see United States v. Specialty Cartage, Inc.*, 113 B.R. 484 (N.D.Ind.1990) (held bankruptcy court had authority to reapportion undersecured IRS lien under "first in time, first in right" theory).

## WHETHER TAX LIEN SECURES PENALTIES

■ The general rule is that penalties are punitive in nature and therefore are not entitled to priority status. However, in this case, the IRS has properly filed a tax lien for the unpaid taxes, interests and penalties for tax years 1988 through 1990. Pursuant to 26 U.S.C. § 6321, the lien secures any unpaid tax as well as incurred interest and assessed penalties. *See United States v. Phillips,* 267 F.2d 374, 377 (5th Cir.1959). Thus, it is undisputed that the lien in question can secure the penalties assessed. Although penalties are generally not entitled to priority status, the IRS has a recorded tax lien which includes the penalties. Thus, the IRS has the right to designate the penalties as part of its secured claim. *See In re Bates,* 974 F.2d at 1236–37 (only pre-petition tax penalties which are punitive in nature and *not* secured by recorded federal tax lien are unsecured, non-priority claim). Where the IRS has a filed a tax lien for unpaid taxes, interest and penalties, this Court will not disturb the apportionment of penalties as part of the secured claim.

## EQUITABLE SUBORDINATION

■ The relief sought by the Debtors is basically in the nature of equitable subordination. The Debtors admitted in arguments that they cannot equitably subordinate the penalties to the status of general unsecured claim. Equitable subordination is an unusual remedy that is applied only to the extent necessary to offset specific harm that occurred as a result of inequitable conduct. *See In re Fabricators, Inc.,* 926 F.2d 1458 (5th Cir.1991). Because no inequitable conduct was alleged, the Court has no authority to equitably subordinate the penalties to unsecured status.

## RELEVANCE OF DATE OF ASSESSMENT

■ The Debtors assert that they are entitled to seek reapportionment of their tax liabilities to the collateral simply because the IRS assessed the taxes, interests and penalties for 1988 through 1990 on the same date. The Court does not find the Debtors' argument relevant or persuasive. The assessments were on the same day because the Debtors were late in filing their returns for those years. Under the Debtors' theory, a debtor who proceeds in bad faith and files several late returns at the same time, thereby resulting in the taxes due for those years being assessed on the same day, can be treated better than a debtor who proceeds in good faith and files timely returns. Even the Debtors admit that their argument would fail if the IRS assessments had been made just one day apart. Here, it was the Debtors' delay in filing their returns which caused the assessments for the various tax years to occur on the same day. The Court is of the opinion that the Debtors' delay in filing tax returns should not result in a special benefit not available to debtors who file timely returns.

## CONCLUSION

Although the Court is sympathetic to the Debtors' situation, the Court is of the opinion that it possesses no authority to grant the relief requested.[6] The method used by the IRS to apportion its claim is within its discretion. The Debtors basically admitted that outside of bankruptcy they would have no basis to require the IRS to reapportion its claim. The holding of *Energy Resources* does not apply to the facts of this case. Accordingly, the Court will not order the IRS to reapportion the tax liability. Therefore,

IT IS ORDERED that the Debtors' objection to the proof of claim filed by the IRS is OVERRULED.

IT IS SO ORDERED, ADJUDGED AND DECREED.

---

**6.** The Debtors' statement that the Court has authority because of "logic and reasoning" is insufficient.