**In re Quentin Richard SENISE, Debtor.**

**Bankruptcy No. 95–74835.**

United States Bankruptcy Court,
D.South Carolina.

July 17, 1996.

Elizabeth M. Atkins, Charleston, SC, for debtor.

Steven M. Webster, Trial Attorney, Tax Division, U.S. Dept. of Justice, Washington, DC, for creditor.

### ORDER AND OPINION

Wm. THURMOND BISHOP, Bankruptcy Judge.

This contested matter is before the Court on debtor's objection to the tax claim of the United States. The debtor, Quentin Senise, is indebted to the United States for various prepetition federal income taxes and

civil penalties. He filed a Chapter 13 petition on or about September 8, 1995, and the United States filed a claim in the case that listed tax liabilities as follows:

| Tax | Period | Date Assessed | Date of Lien Notice | Total Amount* |
|---|---|---|---|---|
| income | 1989 | 6/10/91 | 6/30/92 | 7,216.71 |
| income | 1990 | 5/27/91 | 6/30/92 | 26,580.54 |
| income | 1991 | 10/5/92 | 2/04/93 | 1,929.59 |
| income | 1992 | 7/25/94 | 4/20/95 | 2,316.32 |
| income | 1993 | 7/25/94 | 4/20/95 | 8,072.87 |
| | | 2/13/95 | | 1,533.37 |
| civpen | 6/93 | 3/7/94 | 10/4/94 | 15,543.35 |
| | Total Claim | | | 63,192.75 |

\* total amount includes tax, interest, and related penalties.

The claim, as originally filed, listed a secured claim of $63,192.75. The claim was thereafter amended as shown:

| | | |
|---|---|---|
| Secured | $42,690.00 | (1989, 1990, 1991, 1992, civ pen) |
| Priority | 22,987.76 | (1993, 1994, civ pen) |
| General | 910.99 | (penalty on priority tax claims) |

Pursuant to 11 U.S.C. § 506, the debtor filed a Motion to Value with respect to the secured claim. The secured amount was determined to be $14,690, with the resulting claim as follows: [1]

| | | |
|---|---|---|
| Secured | $14,690.00 | (1989 interest; 1990 tax) |
| Priority | 25,924.59 | (1992, 1993, civ pen) |
| General | 22,578.16 | (1989 penalty, 1990, 1991) |

Federal tax liens arose at the time of the assessments and the liens became secured for priority purposes at the time the respective lien notices were filed.[2] The amended secured claim is comprised of the 1989 and 1990 tax years because those two liens were secured prior to the other tax liabilities. As shown above, the lien notice for 1989 and 1990 was filed in June 1992, which was prior to the filing of lien notices for the other tax liabilities. As a result, the $14,690 secured portion of the claim is comprised of $5,042.26 in unpaid interest for 1989 and the remainder in delinquent tax for 1990, with the remaining balances of the 1989 and 1990 liabilities properly reclassified to general unsecured claims.

The priority claim properly includes income tax liabilities for the years 1992 and 1993, plus a civil penalty claim. The income tax claims are properly classified as priority claims pursuant to Section 507(a)(8)(A) because these liabilities were due within three years of the bankruptcy petition. The civil penalty claim is properly classified as a priority claim pursuant to Section 507(a)(8)(C) because it relates to a tax required to be collected or withheld by the debtor for which he is liable.

The debtor objected to the composition of the claim, specifically the inclusion of the 1989 and 1990 tax liabilities in the secured portion of the claim. He contends that the tax liabilities that are priority claims, such as the civil penalty or the 1993 income tax liability, should be reallocated to the secured claim, which would result in the 1989 and 1990 tax liabilities being stripped to general claims as shown:

**Debtor's Claim:**

| | | |
|---|---|---|
| Secured | $14,690.00 | (civ pen) |
| Priority | 12,775.91* | (1992, 1993, balance of civ pen) |
| General | 36,637.83 | (1989, 1990, 1991) |

\* excludes the 1994 estimated liability of $3,396, which was removed from on an amended claim. See footnote 1.

The debtor's plan that was filed with the Court on January 3, 1996, provides that the general unsecured claims will be paid to the extent of two percent (2%) of each respective claim. A successful attempt to reallocate the tax claim by the debtor would reduce the amount of tax obligations to be paid by approximately $13,000.

The debtor proposed to pay $720 per month under his plan and contends that he cannot pay the tax claim as filed by the United States, but would be able to fund the plan if his total payments were reduced by approximately $13,000. The debtor's former spouse is jointly indebted on the 1989 and 1990 federal income tax liabilities and has

---

1. The amended claim excludes the $3,396 estimate for the 1994 tax year on the original claim because a 1994 tax return reporting no liability was recently filed. An amended claim in this amount was filed on April 3, 1996.

2. The failure of a taxpayer to pay federal taxes gives rise to a tax lien in favor of the United States upon "all property and rights to property" belonging to the taxpayer at the time of assessment. See 26 U.S.C. § 6321. The tax lien becomes effective upon the dates that the tax is assessed and continues until the tax liability has been extinguished. 26 U.S.C. § 6322. The federal tax lien becomes secured for priority purposes at the time the lien notice is filed. 26 U.S.C. § 6323(a).

made some payments within the last year on these debts, apparently under an installment agreement to pay $335.67 per month. For the reasons stated below, the objection to the tax claim is overruled.

## DISCUSSION

I. The federal tax claim is properly filed under the statutory provisions of the Bankruptcy Code and the Bankruptcy Court lacks the authority to reclassify a creditor's claims in a manner that is contrary to those provisions.

 Under the classification scheme enacted by Congress, the Bankruptcy Code sets up three broad classes of claims: secured, priority unsecured and general unsecured. The allowance, characterization and priority of claims in a bankruptcy proceeding is addressed in Chapter 5 of the Bankruptcy Code (11 U.S.C. §§ 501 *et seq.*). Under Section 502, a bankruptcy court is authorized to determine whether a creditor's claim may be allowed; *i.e.,* whether the claim is valid under applicable nonbankruptcy law and whether the Bankruptcy Code authorizes that type of claim to be paid from the estate. If the creditor asserts that its allowed claim is secured by a lien on property in which the estate has an interest, Section 506 establishes the extent to which that claim will be considered a "secured claim." If the value of the property securing the debt is less than the amount of the allowed claim, Section 506(a) provides that the creditor holds "a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property" and "an unsecured claim to the extent that the value of such creditor's interest * * * is less than the amount of such allowed claim". *See Dewsnup v. Timm,* 908 F.2d 588, 590 (10th Cir. 1990), *aff'd,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

 Once a claim is bifurcated, Section 507 determines what priority will be given to that portion of the undersecured claim that has become an unsecured claim. Those unsecured claims not expressly afforded priority of distribution under Section 507 fall into a residual category known as "general unsecured claims." Under Section 507, certain income taxes and trust fund taxes, which are at issue here, are accorded priority status. 11 U.S.C. §§ 507(a)(8)(A), (C). Prepetition interest on those taxes is also given priority. *In re Larson,* 862 F.2d 112 (7th Cir.1988); *In re Garcia,* 955 F.2d 16, 18–19 (5th Cir.1992).

The United States asserted a secured tax claim in this case based upon properly filed notices of tax lien.[3] Based on the debtor's Motion to Value the extent of his interest in property, the federal tax liens were secured against $14,690 of debtor's property. The United States has included the oldest tax debts in the secured claim: $5,042.26 in delinquent interest from 1989 and $9,647.74 in delinquent tax from 1990. The remaining unpaid balance from 1989 (penalty) and 1990 (tax, penalty, and interest) were properly reclassified as general unsecured claims.

 The debtor seeks to reclassify the tax claim by stripping the properly filed secured tax claims for 1989 and 1990 and reclassifying these tax claims to general unsecured status, then reclassifying properly filed priority tax claims to secured status, thereby avoiding the payment of roughly $13,000 in properly filed tax claims. However, neither the debtor, nor the Court, has the authority to reclassify a claim that is properly filed under the classification scheme of the Bankruptcy Code.

 While it is recognized that a Bankruptcy Court has considerable authority and discretionary powers, it is also well established that a Bankruptcy Court's power is limited by the statutory provisions of the

---

**3.** The extent of a federal lien for taxes is defined in Section 6321 of the Internal Revenue Code (26 U.S.C.), Appendix, *infra.* Section 6321 provides, as follows:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to such property, whether real or personal, belonging to such person.

Bankruptcy Code. The Tenth Circuit, in rejecting the argument that the court could reclassify postpetition interest and penalties on a tax claim from a Section 503 administrative expense to a general unsecured claim, held that the "bankruptcy courts' authority does not extend to altering the Code's comprehensive scheme of priorities." *In re Preferred Door,* 990 F.2d 547, 550–551 (10th Cir.1992), *citing Nathanson v. National Labor Relations Board,* 344 U.S. 25, 73 S.Ct. 80, 97 L.Ed. 23 (1952); 3 Collier on Bankruptcy, ¶ 507.02[2] (Lawrence P. King ed., 15th ed.). *In re U.S. v. Noland,* —— U.S. ——, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996).

▆▆▆ The Tenth Circuit, in *In re Bates,* 974 F.2d 1234, 1235–1236 (10th Cir. 1992), flatly rejected the contention that either the debtor or the court could reclassify or reallocate a properly filed tax claim to another claim category under the Bankruptcy Code. In that case, the debtors sought to change a classification from priority to unsecured general with the purpose of paying fewer taxes because full payment was not required with general tax claims. The Tenth Circuit stated that the "debtors are wrong" to claim that *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990) provides a basis for such relief.[4]

Other courts have specifically rejected the premise that a creditor's claim can be reclassified or reallocated in a manner that is inconsistent with the Bankruptcy Code. *See In re Burgess,* 171 B.R. 227, 230 (E.D.Tex. 1994); *In re Divine,* 127 B.R. 625, 628 (D.Minn.1991). The debtors in *Burgess* sought identical relief as in this case, to force priority tax claims into the secured status and stripping properly secured claims to general claims, thereby reducing the debt required to be paid by the Bankruptcy Code. The court noted that *Energy Resources* has

---

4. In *Energy Resources,* the Supreme Court held that a bankruptcy court may order the IRS to apply payments of employment taxes under a confirmed Chapter 11 reorganization plan first to the trust fund portion of the employment tax liability, if doing so is necessary to the reorganization. Some background is helpful in understanding how the holding in *Energy Resources* provides no support for debtors' argument here.

Under Section 6672 of the Internal Revenue Code (26 U.S.C.) corporate officers and others responsible for remitting federal taxes that have been withheld from corporate employees are personally liable for the amount of the taxes they fail to turn over to the Government. Although the individual's liability for these trust fund taxes is separate and distinct from that of the corporation, the IRS will not retain payments that exceed the amount of the unpaid taxes, whether it collects from the responsible persons, the corporation or both. As a result, a responsible person's Section 6672 liability is reduced *pro tanto* by corporate payments of delinquent trust fund taxes. *See USLIFE Title Ins. Co. v. Harbison,* 784 F.2d 1238, 1243 & n. 7 (5th Cir.1986). To best ensure that all corporate employment tax liabilities (which include trust fund and non-trust fund components) will be collected, the IRS applies corporate payments first to the non-trust fund portion of the employment tax liability, leaving open the liability of the responsible persons as an alternative source of collection of the trust fund taxes.

At issue in *Energy Resources* was whether a bankruptcy court could compel the IRS to depart from its policy of using corporate payments to satisfy non-trust fund liabilities first. The corporate reorganization plan in that case provided for full payment of the employment tax liability by installments over six years (see 11 U.S.C. § 1129(a)(9)(C)), but the debtor sought to have the IRS apply the installments first to the trust fund portion of its liability and thereby relieve its responsible persons of their liabilities as soon as possible. The Supreme Court held that the bankruptcy court has the authority to compel application of plan payments in the order requested by the debtor if the court determines that such an application is necessary to the success of the reorganization. *United States v. Energy Resources Co., Inc.,* 495 U.S. at 549, 110 S.Ct. at 2142. In reaching that conclusion, the Court was careful to note that a designation order does not compromise the Government's right under the Bankruptcy Code to be assured that its **full tax claim will be paid** off in six years. 495 U.S. at 550, 110 S.Ct. at 2142–2143.

The Debtor argues that the holding in *Energy Resources* empowers the Court to designate how the IRS should apply payments under their Chapter 13 plan. However, the debtor seeks far more than merely compelling the IRS to apply in a particular order installments that will fully satisfy the federal tax claim. If a proposed plan provided for full payment of the IRS's proof of claim, it would make no difference to them what order the IRS applied the plan installments. But debtors did not propose such a plan, and they attempt to wring from *Energy Resources* authority for the notion that they may force the IRS to reallocate its collateral to the elements of a valid, but undersecured, proof of claim in a manner that reduces the amount that debtors must pay to receive a discharge under Chapter 13. *Energy Resources* does not create a windfall for the debtor at the expense of the federal tax claim.

been limited to its facts by various courts, was therefore not applicable, and that debtors' reliance on the case was misplaced.

One approach in analyzing the propriety of the entire tax claim is to first consider the priority classification: whether the tax debts listed as priority debts are included properly in the priority classification pursuant to Section 507. The 1992 and 1993 income tax claims are properly classified as priority claims pursuant to Section 507(a)(8)(A) because these liabilities were due within three years of the bankruptcy petition. The civil penalty claim is properly classified as a priority claim pursuant to Section 507(a)(8)(C). As such tax debts are proper priority debts under the classification scheme, the tax debts cannot be reclassified. For the nonpriority claims, the remaining issue is whether the debts are secured, which depends on whether tax lien notices were filed and the existence of property of the debtor.

 II. Alternatively, the composition of the secured claim was properly determined and is consistent with both the Bankruptcy Code and nonbankruptcy law.

▇▇▇ The secured claim of $14,690 is properly comprised of the tax liens that were secured first with respect to the bankruptcy Code and the applicable priority schemes under nonbankruptcy law. A separate tax lien arises for each tax year at the time the tax liability is assessed for that year. See 26 U.S.C. §§ 6321–6322. The 1989 and 1990 tax liens were secured by the filing of a lien notice with respect to both years on June 30, 1992.

▇▇▇ The IRS has the prerogative to apportion the debtor's tax liabilities and the debtor cannot use the bankruptcy courts to dictate otherwise. *Burgess,* 171 B.R. at 230. However, in this case the IRS is not arbitrarily selecting, with no foundation or precedence, which liens comprise its secured claim. The general rule with respect to priority against secured federal tax liens under nonbankruptcy law is "first in time, first in right." See generally 26 U.S.C. § 6323; *United States v. McDermott,* 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993), *citing United States v. New Britain,* 347 U.S. 81,

85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *Matter of Specialty Cartage, Inc.,* 115 B.R. 164 (Bankr.N.D.Ind.1989). In *Specialty Cartage,* the bankruptcy court agreed with Government's classification of the oldest tax liabilities as secured and concluded with respect to priority of federal tax liens within bankruptcy as follows (115 B.R. at 166–167):

> [i]n determining who may assert such a claim, "the starting point is legal entitlements that exist outside of bankruptcy." *Matter of American Reserve Corp.,* 840 F.2d 487, 489 (7th Cir.1988). Consequently, the bankruptcy court must begin with rights and obligations as they exist under non-bankruptcy law, before determining the order in which the various claimants will share whatever may be available for distribution. See *Matter of Northwest Engineering Co.,* 863 F.2d 1313, 1315 (7th Cir.1988). In doing so, "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Thus, a secured creditor is generally entitled to receive the same protection during the bankruptcy process as it would receive had no bankruptcy ensued. *Butner, supra,* [440 U.S. at 54–56] 99 S.Ct. at 918. Its non-bankruptcy entitlements should be respected.

Based on either the nonbankruptcy priority provision, Section 6323 (26 U.S.C.), or the bankruptcy provisions, the United States may properly claim that the 1989 and 1990 tax years, which were the first liabilities assessed and the first tax liens to attach, may be secured. *In re Divine,* 127 B.R. 625, 629–630; *see also In re Bolin,* 91–1 U.S.T.C. 87,618 (Bankr.W.D.Ark.1991) (holding that the government may allocate its lien to the oldest taxes owed). Therefore, the composition of the secured claim is properly comprised of the 1989 and 1990 tax debts.

 III. Alternatively, the secured tax claims cannot be stripped and reclassified because neither a taxpayer nor the

Court has the substantive authority to do so.

■ The first portion of the relief sought by the debtor is to reclassify the 1988 and 1989 tax claims from their secured status to an unsecured status, which effectively "strips" these tax liens. However, neither the Court, nor the debtor, nor a taxpayer outside of bankruptcy, has the power to strip secured tax liens. There are no provisions in the Bankruptcy Code or the Internal Revenue Code that permit the stripping of a federal tax lien which is properly secured against the taxpayer's property.[5] Thus, the debtor's attempt to strip and reclassify the 1988 and 1989 secured tax claims must be rejected because it would create a new substantive right, which only Congress can provide.

IV. Alternatively, whether a debtor could designate (allocate) payments within a Chapter 13 plan has no bearing on the proper classification of claims under the Bankruptcy Code.

■ Through this objection, the debtor seeks to confuse the separate and distinct issues of the proper classification of a claim under the Bankruptcy Code, with that of permitting a debtor to direct or designate payments through a plan towards payment of specific tax debts. The classification and allowance of a claim, as detailed above, is determined within the framework of the Bankruptcy Code provisions and without reference to a debtor's secondary desire to direct plan payments to any portion of such claim.

■ It is not necessary for purposes of this Order to decide whether the payments under a Chapter 13 are voluntary or involuntary. Irrespective of whether plan payments are voluntary, even if the debtor could direct the application of payments towards a specific debt, such application merely reduces a particular tax debt. It does not, in any respect, alter how the tax debt is classified under the Bankruptcy Code. The Supreme Court's holding in *Energy Resources* that bankruptcy courts have the authority to permit designation of payments if it is "necessary to the success of a reorganization plan" has no application here for several reasons. The Supreme Court specifically limited its holding to the facts by stating that the designation order does not compromise the Government's right under the Bankruptcy Code to be assured that its **full tax claim will be paid** off in six years. *Energy Resources,* 495 U.S. at 550, 110 S.Ct. at 2142–2143. Furthermore, courts that have interpreted *Energy Resources* have limited the holding to its facts. *See In re Kare Kemical, Inc.,* 935 F.2d 243, 244 (11th Cir.1991); *In re Gregory Engine & Machine Services, Inc.,* 135 B.R. 807, 809 (Bkrtcy. E.D.Tex.1992); *In re Burgess,* 171 B.R. at 229 (cases cited therin); *In re Bates,* 974 F.2d 1234 (10th Cir.1992). In contrast, the properly filed tax claim will not be paid in full under the debtor's reclassified version of the claim. There is a vast difference between allocating corporate payments against the trust fund portion of payroll tax liabilities, which does not affect the total tax payments paid by the debtor, with what the debtor promotes in this case. Here, the Debtor is attempting to designate which portion of the tax liability is secured to ultimately pay nearly $13,000 less in taxes by discharging a larger amount of unsecured general claims. Next, *Energy Resources* did not involve reclassification, but only whether corporate plan payments could be designated and the secondary effect on a nondebtor's liability. In addition, while the Supreme Court recognized in *Energy Resources* that there was some risk of nonpayment of the entire tax claim by permitting designation, the debtor's reclassification in this case guarantees and, therefore, the risk is absolute that the allowed tax claim will not be paid in full. Every court which has considered a

---

5. Section 6323 of the Internal Revenue Code determines priority with respect to competing creditors against federal tax liens. A tax lien may be primed and therefore not be secured due to a senior lien's status. However, this is due to priority, not stripping, and in any event, has no application here.

Section 724(b) of the Bankruptcy Code places certain priority claims ahead of secured tax liens for purposes of estate distribution. However, as noted, this authority with respect to distribution priority is clearly set forth by statute. This modification is not stripping and has no application here.

reclassification that ultimately reduces the amount paid through the plan has rejected the request. As pointed out by the courts that have considered this issue in *Bates* and *Preferred Door*, along with *In re Burgess* and *In re Divine*, the broad power granted the Bankruptcy Court in *Energy Resources* should "not be interpreted as enlarging a bankruptcy court's equitable powers to include the avoidance of a tax liability 'which would in the ordinary course of things be nondischargeable.'" *In re Burgess*, 171 B.R. at 230 (quoting *In re Lambert*, 124 B.R. 345, 347 (Bankr.W.D.Okla.1991)); *In re Gregory Engine*, 135 B.R. at 810.

The debtor contends that the reclassification is necessary for the success of the reorganization. However, the mere fact that a reduced tax claim and the resulting lower plan payments would make it easier for the debtor to finance the plan has no bearing on whether the tax claim is properly classified. In one respect, it would always be necessary to reclassify and thereby reduce the actual amount paid if the debtor cannot otherwise fund the plan. The classification scheme enacted by Congress cannot be altered to suit a particular debtor's circumstance. Irrespective of how the argument is posited, the debtor cannot make the grand leap from merely directing how plan payments are applied to reclassifying a creditor's properly filed claim in bankruptcy.

The debtor contends that the government will likely get paid in full because his former spouse is paying on the joint tax liabilities for 1989 and 1990. The former spouse's liability is irrelevant to that of the debtor. Also, there is no guarantee that the former spouse would fully pay the liability. The combined debt for those two years is approximately $34,000. Under the debtor's reclassified claim, the entire balance for 1989 and 1990 is an unsecured general claim, so the debtor's former spouse would have to pay the $34,000 before the tax claim could be considered to be paid in full through the plan. Moreover, considering that the 1989 and 1990 tax debts are nonpriority claims, there is nothing to prevent the former spouse from discharging these debts in a Chapter 7 bankruptcy, in which case the tax claims would not be paid

at all by either the debtor or his former spouse.

Finally, this attempt to reclassify affects not only tax claims, but all Section 507 priority claims if the creditor happens to have a second nonpriority claim. As a consequence, any priority creditor is subject to have their properly filed claim attacked in this manner.

## CONCLUSION

Based on the foregoing reasons, the objection to the tax claim of the United States is overruled.